

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1998

# Kleissler v. US Forest Ser

Precedential or Non-Precedential:

Docket 98-3137

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Kleissler v. US Forest Ser" (1998). *1998 Decisions.* Paper 237.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 30, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3137

JAMES KLEISSLER; SUSAN CURRY; ARTHUR CLARK;
RODGER CLARKE; ELOISE GLENN; MICHAEL KAIZAR;
HEARTWOOD, INC.,

v.

UNITED STATES FOREST SERVICE; MICHAEL P.
DOMBECK, Chief Forester for the Eastern Region, United
States Forest Service; ROBERT T. JACOBS, Forester for
the Eastern Region - United States Forest Service; JOHN
PALMER, Forest Supervisor for the Allegheny National
Forest - United States Forest Service;

v.

RIDGWAY AREA SCHOOL DISTRICT; BRADFORD AREA
SCHOOL DISTRICT; KANE AREA SCHOOL DISTRICT;
JOHNSONBURG AREA SCHOOL DISTRICT; SMETHPORT
AREA SCHOOL DISTRICT; CHERRY GROVE TOWNSHIP;
HAMILTON TOWNSHIP; HAMLIN TOWNSHIP; HIGHLAND
TOWNSHIP; WETMORE TOWNSHIP; TOWNSHIP OF
JONES; BROOKVILLE WOOD PRODUCTS, INC.;
NORTHEAST HARDWOODS; RIDGWAY LUMBER
COMPANY; ALLEGHENY HARDWOOD UTILIZATION
GROUP, INC.,
          Appellants

PAYNE FOREST PRODUCTS, INC.; SPILKA WOOD
PRODUCTS COMPANY,
          Intervenor-Defendants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 97-cv-02187)

Argued: June 10, 1998

Before: BECKER, Chief Judge, ALDISERT and WEIS,
Circuit Judges.

Filed: September 30, 1998

James E. Scheuermann, Esquire
  (ARGUED)
David L. McClenahan, Esquire
William J. Labovitz, Esquire
Daniel P. Trocchio, Esquire
KIRKPATRICK & LOCKHART
1500 Oliver Building
Pittsburgh, PA 15222-2312

Attorneys for Appellants

William V. Luneburg, Esquire
  (ARGUED)
3900 Forbes Avenue
Pittsburgh, PA 15260

Attorney for Appellees James
Kleissler; Susan Curry; Arthur Clark;
Rodger Clarke; Eloise Glenn; Michael
Kaizar; Heartwood, Inc.

Amy R. Hay, Esquire
Bonnie R. Schlueter, Esquire
Office of the United States Attorney
633 U.S. Post Office & Courthouse
Pittsburgh, PA 15219

Attorneys for Appellees United States
Forest Service; Michael P. Dombeck;
Robert T. Jacobs; John Palmer

OPINION OF THE COURT

WEIS, Circuit Judge,

The district court denied a request for intervention by local governmental bodies and business concerns in litigation brought by environmentalists to restrict logging activities in a National Forest. We conclude that the proposed intervenors established a threat to their interests from the suit and a reasonable doubt whether the government agency would adequately represent those concerns. Accordingly, we reverse the district court's order and remand for further proceedings.

Plaintiffs are six Pennsylvania and Ohio residents and an Indiana organization committed to environmental preservation. They filed suit against the United States Forest Service ("Service") asserting that the agency had violated statutory requirements in approving two projects that permitted substantial tree cutting in the Allegheny National Forest. Plaintiffs requested an injunction barring implementation of the proposed measures, halting all logging activity, and suspending or canceling contracts for logging in the forest. In addition, plaintiffs sought a declaration that approval of the projects was arbitrary, capricious, and not in conformity with the law.

Through the National Forest Management Act of 1976, Congress authorized the Secretary of Agriculture to develop land and resource plans that are used as a guide to all resource activities in a national forest, including timber harvesting. See 16 U.S.C. S 1604. The process is described in some depth in Ohio Forestry Association v. Sierra Club, 118 S.Ct. 1665 (1998) and need not be detailed here. The statute also imposes procedural obligations on the Secretary to ensure that environmental interests will be considered in the plan.

In 1997, the Service, as the Secretary's designee, approved the Minister Watershed Project and the South Branch Willow Creek Project, both covering areas within the Allegheny National Forest in Northwestern

Pennsylvania. The projects called for substantial tree harvesting through "even-aged management." This process, in general terms, contemplates clearing designated areas of all trees, rather than focusing on individual trees within the given tract, the latter being far more costly and time-consuming for timber companies. See 36 C.F.R. S 219.3; see also Sierra Club v. Espy, 38 F.3d 792, 795, 798-800 (5th Cir. 1994) (discussing the technique and Congressional approval at some length). In launching the projects, the Service concluded that they were consistent with the resource plan and would not create a significant environmental impact within the forest.

The plaintiffs' complaint alleges that the projects violate the National Environmental Policy Act (NEPA), 42 U.S.C. S 4332, because of the lack of an environmental impact statement and, among other things, the failure to consider more environmentally-protective alternatives. The complaint also alleges several violations of the National Forest Management Act, including an objection to even-aged management and the "landscape corridor approach," which endorses the even-aged timber-cutting philosophy.

A motion for leave to intervene was filed by a number of area school districts located near the Allegheny National Forest, including Ridgway, Bradford, Kane, Johnsonburg, and Smethport. In addition, six townships--Cherry Grove, Hamilton, Hamlin, Highland, Wetmore, and Jones--sought intervention.

The school districts and municipalities asserted an interest in the suit because they receive funds from receipts of logging operations in the forest. By statute, the federal government disburses twenty-five percent of the gross amounts received from the forest to the Commonwealth of Pennsylvania at the end of each fiscal year. 16 U.S.C. S 500. In turn, the Commonwealth forwards these sums to counties where the forest is situated, which then pass the money on to local municipalities and school districts for the benefit of public schools and roads. 72 Pa.C.S.A. SS 3541-3543. During the ten years preceding the filing of this suit, the federal government disbursed, on average, in excess of $4 million per year to the Commonwealth.

4

Elimination of logging contracts would deprive the localities of this resource.

Joining the motion for leave to intervene were Brookville Wood Products, Inc., Northeast Hardwoods, Ridgway Lumber Co., Payne Forest Products, Inc., Spilka Wood Products Co., and Allegheny Hardwood Utilization Group, Inc. Payne and Spilka have existing contracts to cut timber as part of the Minister Watershed Project. Ridgway was the successful bidder on a contract under the South Branch Willow Creek Project, but the Service has withheld awarding the contract pending the outcome of this litigation. Brookville Wood Products and Northeast Hardwoods are also lumber companies that generate most of their income from contracts with the Service. Allegheny Hardwood is a nonprofit corporation whose members hold existing sales contracts with the Service and expect to bid on future timber sales contracts that would be affected by this litigation.

The district court reviewed the prerequisites for intervention as set out in Federal Rule of Civil Procedure 24(a)(2) and denied the motion as to all applicants except Payne and Spilka. In those two instances, the court determined that intervention was justified because existing contract rights would be threatened if plaintiffs prevailed.

The court observed that the other applicants had interests of "an economic nature based on expectation." Although those "interests are very important, the court is compelled to conclude based on the case law that they are not the type of protectable interests that justify intervention as of right under Rule 24(a)(2)." The court also denied permissive intervention under Rule 24(b)(2). All of the unsuccessful applicants have appealed.

I.

During the pendency of this appeal, the district court entered summary judgment for defendants on most claims asserted by plaintiffs with respect to the two projects because of the failure to exhaust administrative remedies. The district court is presently considering whether claims

5

challenging the landscape corridor approach as a management philosophy should suffer a similar fate.

Plaintiffs have secured a certification under Federal Rule of Civil Procedure 54(b) and are appealing the adverse district court ruling. Because that order and any future adverse action on the remaining claim might be reversed by this Court or the Supreme Court, the applicants' ability to participate remains a viable issue. This appeal consequently is not moot. Mausolf v. Babbitt, 85 F.3d 1295, 1297 (8th Cir. 1996); United States Postal Serv. v. Brennan, 579 F.2d 188, 190 n.1 (2d Cir. 1978).

II.

Federal Rule of Civil Procedure 24 provides in pertinent part:

> "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

We have interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation. Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365–66 (3d Cir. 1995); Development Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 161–62 (3d Cir. 1995); United States v. Alcan Alum., Inc., 25 F.3d 1174, 1181 (3d Cir. 1994); Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987).

We will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect. Harris, 820 F.2d at 597. The parties to this appeal do not dispute the timeliness of the motion for leave to intervene, so we move on to consider the other elements.

To justify intervention as of right, the applicant must have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971). That observation, however, has not led to a"precise and authoritative definition" of the interest that satisfies Rule 24(a)(2). Mountain Top Condo., 72 F.3d at 366; see also Conservation Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992) ("no bright line of demarcation exists"). Some courts treat the "interest" test as a pragmatic process that qualifies as many concerned parties as is compatible with efficiency. Others reject interests that are "speculative." Often the determination of whether an interest is significantly protectable is "colored to some extent" by the "practical impairment" inquiry. Conservation Law Found., 966 F.2d at 41–42.

The nebulous nature of the standard is apparent from our precedents. Old Colony Trust Co. v. Penrose Industries Corp., 387 F.2d 939, 941 (3d Cir. 1968), held that in a declaratory judgment action over the commercial reasonableness of the sale price of collateral, a "would–be purchaser" did not have an adequate interest for intervention. On the other hand, in EEOC v. AT&T, 506 F.2d 735, 741–42 (3d Cir. 1974), a union was permitted to intervene to contest a proposed consent decree between the government and an employer that could have affected the terms of a collective bargaining agreement.

In Harris, the court denied intervention to a district attorney in a suit brought to alleviate overcrowding and other conditions in the local penal institution. We observed that the district attorney did not administer the prison and that a consent decree placing a ceiling on the prison population would only tangentially affect his ability to prosecute. 820 F.2d at 599–603. By contrast, Alcan

Aluminum held that an adequate interest for intervention had been established where a right of contribution for expenses incurred in cleaning up a hazardous waste site could have been jeopardized by a proposed consent decree. 25 F.3d at 1183–86.

Brody involved a suit to enjoin religious speech. A group of students and parents sought to intervene in opposition to plaintiffs. We concluded that the proposed intervenors had no interest in litigating the merits of the school's policies, but to the extent a remedy fashioned in a decree might infringe on their First Amendment rights, the parents and students could be eligible for participation in the suit. 957 F.2d at 1116–17. We also commented on "our policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." Id. at 1123.

In Alpha Housing, the sole member of a nonprofit corporation sought to intervene to protect the continued viability and tax exempt status of the corporation. We accepted the plaintiffs' concession that these interests were significant enough to support intervention. 54 F.3d at 162. Finally, in Mountain Top Condominium, we concluded that the intervenors' interest in the disposition of a specific fund was sufficient to justify intervention even though they could not challenge the merits of another party's claim to the fund. 72 F.3d at 367–68.

This brief review of our jurisprudence does not yield a pattern that will easily support or defeat intervention in all circumstances. Rather, the variety of factual situations and their resolution demonstrate our adherence to the elasticity that Rule 24 contemplates when compared to the rigidity of earlier practice. See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 133–34 (1967).

A leading treatise explains that pragmatism is a substantial factor that must be considered: "The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, [under the former rule], that intervention must be limited to those who would be legally bound as a matter of res judicata." 7C

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d S 1908, at 301 (1986).

Phraseology such as "mere economic interests," for example, has been used but has not proved decisive in practice,[1] nor have concepts such as "mere expectancies" or "indefiniteness" been particularly helpful in identifying the nature of the interest required. We have more often relied on pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding. Those considerations, however, should not prevail if the focus of the litigation would be unduly dissipated or case management would become exceptionally complex.

Our survey of the law in other Circuits, particularly as applied in environmental litigation, provides some helpful background. In Sierra Club v. Espy, 18 F.3d 1202 (5th Cir. 1994), the case upon which the district court principally relied, plaintiffs challenged certain management practices of the Service in Texas forests. The Court of Appeals for the Fifth Circuit concluded that two trade groups whose members included the "major purchasers and processors" of timber had an interest sufficient to satisfy Rule 24(a). Id. at 1207. In that case, some member companies had interests in existing timber contracts. Id.

In Sierra Club v. Glickman, 82 F.3d 106 (5th Cir. 1996) (per curiam), a trade association representing farmers sought intervention in a suit to cut off federal subsidies to those who pumped water from an aquifer. Plaintiffs contended that over-pumping threatened endangered species and public health. The court concluded that the suit "potentially" interfered with the intervenors' contract

_____

1. That phrase and others like it were mentioned in Mountain Top Condominium, 72 F.3d at 366, and Alcan Aluminum, 25 F.3d at 1185. The concept was explored in New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464-66, 470 (5th Cir. 1984) (en banc). The issue in NOPSI was the remoteness of the interest of the city as a regulatory agency in a breach of contract suit brought by a public utility against one of its gas suppliers. It was not the fact that the city's interest was financial in nature that disqualified it, but rather, because its interest was too attenuated from that of the utility. Id. The city failed to show that it possessed any interest recognized by substantive law.

rights by disrupting their access to irrigation water. Id. at
109.

Similarly, intervention was permitted by the Court of
Appeals for the First Circuit in Conservation Law
Foundation, where plaintiffs and a government agency
agreed on a consent decree that set timetables for the
establishment of a government plan that would impair the
business of commercial fisheries. As targets of a regulatory
plan ultimately aimed at reducing over-fishing, the
commercial fisheries alleged an interest that supported
intervention. 966 F.2d at 43-44.

Some decisions, however, adopt a more mechanical
approach when evaluating the relevant interests. In
Portland Audubon Society v. Hodel, 866 F.2d 302 (9th Cir.
1989), for example, the Court of Appeals for the Ninth
Circuit held that an economic interest in protecting a
continuous supply of timber was insufficient to warrant
intervention in a NEPA case by a trade group and various
timber companies. Following Wade v. Goldschmidt, 673
F.2d 182 (7th Cir. 1982) (per curiam), Portland Audubon
held that in a suit to compel an agency to follow NEPA, only
governmental bodies may be defendants. Id. at 309; see
also Forest Conservation Council v. United States Forest
Serv., 66 F.3d 1489, 1499 n.11 (9th Cir. 1995) (citing Sierra
Club v. EPA, 995 F.2d 1478, 1485 (9th Cir. 1993)); cf. Collin
County v. Homeowners Assoc. for Values Essential to
Neighborhoods (HAVEN), 915 F.2d 167, 170-72 (5th Cir.
1990) (plaintiffs lacked standing to sue for a judgment
declaring governmental compliance with NEPA). But cf.
Mountain States Legal Found. v. Glickman, 92 F.3d 1228,
1232-33, 1236 (D.C. Cir. 1996) (lumber company has
standing to sue the Service under the National Forest
Management Act and challenge its decision to limit timber
harvesting).

These cases seem to suggest that NEPA suits are sui
generis because "only the government" can comply with
that statute. We are reluctant to endorse a narrow
approach that makes the onus of compliance the litmus
test for intervention. Such a wooden standard minimizes
the flexibility and spirit of Rule 24 as interpreted in
Cascade Natural Gas. See Espy, 18 F.3d at 1207

10

(permitting timber industry organization to intervene as a defendant in a NEPA case against the Service).

The reality is that NEPA cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention-- the protection of third parties affected by pending litigation. Evenhandedness is of paramount importance. See Note, Sierra Club v. U.S. Environmental Protection Agency: Intervention of Right and the Victories that Come Back to Haunt, 7 Tul. Envtl. L.J. 271, 283 (1993).

The expansion of standing by statute and case law has enabled "private attorneys general" and "public interest" groups to call governmental agencies to task in litigation. These efforts, though often well-intentioned, sometimes concentrate on narrow issues that are of significant concern to plaintiffs but have an immediate and deleterious effect on other individuals and entities. Rather than barring access to these parties, Rule 24 allows the court to give them the opportunity to present their positions.

Thus, we are reluctant to accept the holdings of the Court of Appeals for the Ninth Circuit in Portland Audubon and Sierra Club v. EPA that, in reliance on Wade, seem to adopt a categorical rule in NEPA cases barring private support for governmental agencies. Wade did not espouse such a rigid position. In that case, the Court denied intervention to various municipalities and private parties that would have benefitted from a highway project because their interests were not directly implicated by the lawsuit. The Court cautioned, however, that a different case would be presented if the suit would "directly alter contractual or other legally protectable rights of the proposed intervenors." 673 F.2d at 186 n.6.

The Ninth Circuit inched away from the doctrinaire approach in Forest Conservation Council by allowing non-federal parties to intervene in a NEPA case, but limited their participation to the remedy phase. 66 F.3d at 1499 & n.11. Some of our cases, particularly Harris and Brody, have endorsed a bifurcated approach in some circumstances. We explored the viability of that form of relief with counsel at oral argument, but neither they nor

11

we have been able to arrive at a pragmatic application of that option here without unduly attenuating the applicants' interests.

The convergence of conservation and timber interests that has occurred in this case confirms that the categorical approach can be too inflexible. Protecting timber interests has been an express Congressional policy since the establishment of the national forest system through the Organic Administration Act of 1897. 16 U.S.C. S 475. That policy was affirmed in the Multiple-Use Sustained-Yield Act of 1960, 16 U.S.C. SS 528-31, and reaffirmed in the National Forest Management Act of 1976. 16 U.S.C.S 1604. The National Forest Management Act also blends logging and environmental interests by requiring land management plans to be drafted "under the principles of the Multiple-Use Sustained-Yield Act" and "in accordance with" NEPA. 16 U.S.C. S 1604(g)(1).

Under these circumstances, we think that the decision of the Court of Appeals for the Fifth Circuit in Sierra Club v. Espy represents a more realistic approach in permitting intervention. Timber companies have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting.

Adequacy of interest alone, however, is not enough to grant intervention. Because Rule 24(a) envisions a separate inquiry into whether the government or other existing parties will adequately advocate the applicant's interest, courts must be careful not to blur the interest and representation factors together. See e.g., Solid Waste Agency v. United States Army Corps of Engineers, 101 F.3d 503, 508 (7th Cir. 1996) (in suit to compel issuance of a permit to allow establishment of a landfill, adjacent municipality and citizens group could intervene to defend the Corps' denial; "stumbling block" would be"proving inadequacy of representation" by the government).

The burden of establishing inadequacy of representation by existing parties varies with each case. A government entity charged by law with representing a national policy is presumed adequate for the task, Brody, 957 F.2d at 1123,

12

particularly when the concerns of the proposed intervenor, e.g., a "public interest" group, closely parallel those of the public agency. In that circumstance, the "would-be intervenor [must make] a strong showing of inadequate representation." Mausolf, 85 F.3d at 1303. But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light. Conservation Law Found., 966 F.2d at 44; accord Mausolf, 85 F.3d at 1303 ("when the proposed intervenors' concern is not a matter of `sovereign interest,' there is no reason to think the government will represent it"); see also Solid Waste Agency, 101 F.3d at 508-09 (raising concerns that workload of Solicitor General's Office could prevent an agency's appeal and thus adversely affect proposed intervenors).

This overview demonstrates that Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

Counseled by these appellate opinions, we assess the case before us. The relief sought by plaintiffs, i.e., an injunction to bar logging (at least until such time as the NEPA process is completed) would have an immediate, adverse financial effect on the school districts and municipalities. That result is not speculative, intangible or unmeasurable, especially when, as other courts have observed, NEPA compliance actions can take years. See, e.g., Forest Conservation Council, 66 F.3d at 1498.

The school districts and municipalities have direct interests in this litigation because state law commands the Commonwealth, through its political subdivisions, to forward to them federal grant money generated through

13

timber harvesting each year, money that they will lose, at least temporarily and perhaps permanently, if plaintiffs are successful in this lawsuit. To suspend the flow of revenue to the school districts and municipalities for even a limited period of time would affect spending for essential school activities and public projects. We are persuaded that the interests jeopardized, which are protected by state law, are direct, substantial and of adequate public interest as to justify intervention. In these sparsely populated areas with limited tax bases, the impairment caused by curtailing revenue provided through logging activity would be significant.

Turning to the private-party applicants, the district court cited Sierra Club v. Espy for the proposition that only those timber companies with existing contracts had an interest that would support intervention. From our point of view, Sierra Club v. Espy states a rule of inclusion for evaluating interests under Rule 24(a)(2), but should not be read to exclude similar, contract-related interests of the type implicated here.

Ridgway Lumber had more than a mere expectancy of obtaining a contract in the future. It was already a successful bidder, and from all that appears in the record, would now be a party to a remunerative contract for logging but for the institution of this litigation. Realistically, Ridgway has as strong an economic stake in the outcome of this litigation as do Spilka and Payne, which were permitted to intervene.

Brookville Wood Products and Northeast Hardwoods may not have received contracts under the projects challenged by plaintiffs, but the district court found that they are "very dependent on timber contracts with the [Service] to cut timber" in the Forest and "their continued existence may be jeopardized" if plaintiffs prevail. Dist. Ct. Op. at 5. In addition, like the other timber companies, they have a considerable stake in ensuring that the landscape corridor approach to forest management remains in place. Congress has designated our national forests for multiple uses, but it has also emphasized that those uses are "not in derogation of" timber harvesting. 16 U.S.C. S 528. This statement of policy, when viewed in light of the district court's finding

14

that a victory for plaintiffs could destroy their business, satisfies us that Brookville and Northeast Hardwoods have a substantial interest, directly related to and threatened by this litigation, that meets the requirements of Rule 24(a).

Allegheny Hardwood falls within the category of those trade associations representing threatened businesses granted intervention in such cases as Sierra Club v. Glickman, 82 F.3d at 108, Sierra Club v. Espy, 18 F.3d at 1203, and Conservation Law Foundation, 966 F.2d at 40. We find the rulings in those cases persuasive and applicable to Allegheny Hardwood.

Therefore, we conclude that the interests of the private-party applicants are direct, not remote. In other words, they have more than mere attenuated economic interests because, as we have outlined, their longstanding dependence on contractual relations with the Service is unique to them.

Although plaintiffs assert that the proposed intervenors' interests are adequately protected by the government defendant, the district court found otherwise with respect to Payne and Spilka. The court pointed out that in a companion case, Curry v. United States Forest Service, 988 F. Supp. 541 (W.D. Pa. 1997), the agency chose not to appeal an adverse ruling in connection with timber sales in other projects in the Allegheny National Forest. Consequently, that litigation gave legitimate pause to the lumber companies' confidence in adequate representation by the Service.

In addition, the government represents numerous complex and conflicting interests in matters of this nature. The straightforward business interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies. See Sierra Club v. Glickman, 82 F.3d at 110; Forest Conservation Council, 66 F.3d at 1499; Sierra Club v. Espy, 18 F.3d at 1207–08; Conservation Law Found., 966 F.2d at 44–45. Although it is unlikely that the intervenors' economic interest will change, it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.

15

Plaintiffs contend that whatever the doubts about the vigor of the government's representation, Payne and Spilka's interests are aligned with those of the proposed intervenors. We disagree. It does not strain the imagination to conjure up situations in which Payne and Spilka may face the irresistible temptation to work out settlements that benefit themselves and not the other, competing timber companies. Compromises of that nature might also harm the school districts and municipalities, which have interests inextricably intertwined with, but distinct from, those of the timber companies. See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group, 715 F.2d 1256, 1261 (7th Cir. 1983).

In Solid Waste Agency, the Court of Appeals for the Seventh Circuit discussed the value of a "wait and see" approach in which proposed intervenors would file a conditional application with the understanding that the district court would defer consideration until requested to do so. 101 F.3d at 508-09. Such a procedure may work in some cases, but on balance, intervenors and the public interest in efficient handling of litigation are better served by prompt action on a intervention motion. See Conservation Law Found., 966 F.2d at 44 ("An intervenor need only show that representation may be inadequate, not that it is inadequate."). The early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement. Postponing intervention in the name of efficiency until after the original parties have forged an agreement or have litigated some issues may, in fact, encourage collateral attack and foster inefficiency. In other words, the game may already be lost by the time the intervenors get to bat in the late innings.

III.

We conclude that in the circumstances of this case, the motion for leave to intervene should have been granted. Each applicant has a significantly protectable interest in the transaction that may be jeopardized by the lawsuit. None of the existing parties will adequately represent their interests. Although there are a number of intervenors, we are confident that the very able district judge will effectively

16

handle any case-management problems that may arise. Accordingly, we will reverse the order denying intervention and remand the case to the district court for further proceedings consistent with this Opinion.2

_____

2. In light of our holding that the applicants should have been granted leave to intervene as of right under Rule 24(a), we need not decide whether the district court should have granted permissive intervention under Rule 24(b).

17

BECKER, Chief Judge, Concurring.

Although I believe the question to be close as to the intervention of Brookville Wood Products, Inc. and Northeast Hardwoods, I agree with the majority that the district court should have granted the request of the appellants to intervene as of right, hence I concur in the judgment. I fear, however, that the majority's analytic framework departs from the doctrinal view that this Court has taken of Rule 24(a)(2), will create mischief in this area, and will open intervention as of right to an amorphous "I know it when I see it" approach. I therefore write separately to set forth my view of the correct governing principles.

I.

Contemporary litigation--particularly environmental litigation--frequently affects numerous individuals, groups, communities, and business interests, including those not originally made party to the litigation. The question often arises, as in this case, whether any of these outsiders has a right to intervene and to be made a party to the case. Plaintiffs have requested an injunction halting all logging activities in the Allegheny National Forest ("ANF"), canceling all existing contracts for logging in the Forest, and preventing the United States Forest Service from entering into new contracts. The Forest Service is a party to contracts with certain logging companies and, if not prevented by the present litigation, would enter into contracts with other companies for logging in the ANF. The proceeds from these contracts redound not only to the benefit of the federal government, but also, pursuant to federal and state law, to the benefit of the local school districts and municipalities in which the ANF is located. Should the requested injunction issue, not only will logging jobs be lost and municipal tax revenues from workers' incomes and company profits be reduced, but negative economic effects also would be felt by logging supply companies and even by other local businesses (food establishments, real estate developers, etc.). The issue before us is whether the district court erred when it concluded that, of all of these individuals and groups, only two logging companies with existing contracts with the

18

Forest Service met the requirements for intervention as of right pursuant to Rule 24(a)(2).1

Federal Rule of Civil Procedure 24(a)(2) provides that:

> (a) Intervention of Right. Upon timely app lication anyone shall be permitted to intervene in an action:. . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As the majority notes, we have required proof of four elements for intervention under Rule 24(a)(2): (1) a timely application; (2) sufficient interest in the liti gation; (3) which might be impaired, as a practical matter, by disposition of the action; and (4) inadequate representation of t he applicant's interest by existing parties to the litigation. See Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365–66 (3d Cir. 1995). A district court's denial of intervention as of right will be reversed only if the court has abused its discretion by applying the wrong legal standard or reaching a conclusion we are confident is incorrect. See Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir. 1987).

One prominent source has suggested that the inquiry under Rule 24(a)(2) must be "flexible," with a"balancing and blending" of the individual elements, and that "[t]he criteria should be considered together rather than discretely." 6 James Wm. Moore, Moore's Federal Practice S 24.03[1][b] (3d ed. 1998). The majority appears to adopt such a "flexible" and "blending" approach to Rule 24(a)(2), endorsing what it sees as the Rule's "elasticity," Maj. Op. at 8, and calling for "pragmatic considerations" when evaluating a petition for intervention. Maj. Op. at 9. I

_____

1. Because I conclude that the appellants are entitled to intervention as of right under Rule 24(a)(2), I agree with the majority that we need not reach the question of whether they are entitled to permissive intervention under Rule 24(b)(2).

19

acknowledge, with my colleagues in the majority, that "pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding," id., are relevant in the Rule 24(a)(2) analysis, and that excessive rigidity is neither desirable nor likely what the rulemakers intended in adopting the amended Rule 24 in 1966. I fear, however, that the majority has taken the pragmatism that the 1966 amendments introduced to Rule 24 too far--well past the intentions of the Rule's framers, and past any recognizable standard to guide trial courts when faced, as they frequently are, with petitions for intervention by parties with varying degrees of interest in the litigation before the court. I also am concerned that this"blending" approach opens the intervention door to parties with a minor interest or a small likelihood of impairment--as long as they can make up for the shortfall in one element with strength in another. More importantly, I do not believe that the text of the Rule will support the majority's gloss.

II.

The most difficult question in many intervention cases, and I believe in this one as well, is the nature of the proposed intervenors' interest and whether this interest is sufficient to meet the requirements of Rule 24(a)(2).[2] The starting point for this analysis must be Donaldson v. United States, 400 U.S. 517 (1971). In Donaldson, the Supreme Court held that the interest under Rule 24(a)(2) must be one that is "significantly protectable." Id. at 531. Although the Supreme Court has failed to provide further guidance as to the meaning of this phrase, we have decided a number of cases in which the nature of the necessary interest has been explored. In my opinion, the majority errs in viewing these precedents as creating a "nebulous" standard. Maj. Op. at 7.

In Harris, supra, we said that a would-be intervenor "must demonstrate that there is a tangible threat to a legally cognizable interest." Harris, 820 F.2d at 601. In

_____

2. Like the majority, I do not discuss the timeliness requirement, as no party to this appeal contests the timeliness of the proposed intervenors' petition.

20

Mountain Top, supra, we held that "a mere economic interest" is insufficient. 72 F.3d at 366. While these cases do not give us a bright-line standard, they do flesh out the contours of the doctrine. They reduce the analysis to a two-part inquiry, i.e., we must examine (1) the reality of the interest--does the litigation pose a "tangible threat" to the applicant or simply a speculative one?--and (2) the nature of the interest, e.g., is it a "mere economic interest"? We have found an interest insufficient when a party's status was simply "would-be purchaser" of collateral, see Old Colony Trust Co. v. Penrose Indus. Corp., 387 F.2d 939, 941 (3d Cir. 1968), or when a district attorney's ability to prosecute cases would not be directly affected by a prison consent decree, see Harris, 820 F.2d at 599-603. In contrast, we have found a sufficient interest when a proposed consent decree directly impinged on an existing contractual right, see EEOC v. AT&T, 506 F.2d 735, 741-42 (3d Cir. 1974), or on a statutory right of contribution, see United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1183-86 (3d Cir. 1994). As these cases demonstrate, when the interest at issue is both real and legally cognizable (through contract, statute, or a property right), we have found it to meet the requirements of Rule 24(a)(2) and Donaldson. See also Brody v. Spang, 957 F.2d 1108, 1117 (3d Cir. 1992) (finding an interest sufficient when a consent decree altered "legal rights and responsibilities of the applicants for intervention").

Other courts have distinguished interests sufficient under Rule 24(a)(2) from those not sufficient for intervention as of right in a similar manner. In Scotts Valley Band of Pomo Indians v. United States, Indian bands brought suit against the federal government to restore the trust status of certain land. See 921 F.2d 924 (9th Cir. 1990). The Ninth Circuit concluded that the City of Chico had an interest sufficient for intervention because the litigation could result in the removal of certain property from the city's tax rolls and from under its regulatory purview. See id. at 927-28. In contrast, the Second Circuit found the interest of proposed intervenors to be too speculative in a case in which plaintiffs sought to force the Environmental Protection Agency to promulgate new air quality standards. See American Lung Ass'n v. Reilly, 962

21

F.2d 258 (2d Cir. 1992). There, although the proposed intervenors, electric utilities and trade associations, had an interest in the regulations themselves, the plaintiffs did not seek to enjoin any activities in which the utilities had a direct interest and therefore the utilities had no legally cognizable interest that would be altered by the litigation itself. See id. at 261.

In similar situations, other courts have found a sufficient interest for intervention because the proposed intervenors would be directly affected by the litigation seeking changes in federal agency rulemaking. See, e.g., Sierra Club v. Glickman, 82 F.3d 106, 109 (5th Cir. 1996) (farm group had sufficient interest in suit which sought to prevent government agency from expending funds to, or fulfilling contracts with, farmers); Sierra Club v. Espy, 18 F.3d 1202, 1207 (5th Cir. 1994) (timber purchasing companies with existing contracts had legally cognizable interest sufficient to intervene in challenge by environmental groups to Forest Service policies regarding logging procedures); Sierra Club v. United States Envtl. Protection Agency, 995 F.2d 1478, 1482 (9th Cir. 1993) [U.S. EPA] (relief sought by plaintiffs would directly impinge on intervenor-city's existing permit rights under Clean Water Act); Conservation Law Found. v. Mosbacher, 966 F.2d 39, 43 (1st Cir. 1992) (Weis, J.) (consent decree requiring promulgation of new fishing plan would directly affect intervening fishing groups because it would require not only a new plan but specifically a plan to reduce overfishing).3

_____

3. I note that, while I agree with the majority that it would be inappropriate to adopt a categorical rule that non-governmental bodies cannot intervene in NEPA cases, I believe that the Ninth Circuit has clarified its holding in Portland Audubon that "governmental bodies charged with compliance can be the only defendants" in a NEPA action. Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 309 (9th Cir. 1989) (internal quotations omitted). In U.S. EPA, supra, as well as in more recent cases, the Ninth Circuit has explained its holding in Portland Audubon as simply requiring that the intervenor have some interest protected by statute, contract, or property rights other than the statutory scheme of NEPA itself, which by its terms only applies to the federal government. U.S. EPA, 995 F.2d at 1483-84. In Portland Audubon, the proposed intervenors' interest "appears to have been an economic

22

III.

I turn to applying the foregoing analytic framework (and case law) to the parties seeking intervention in this case. While my approach differs from the majority's, it leads to the same conclusion, that all potential intervenors have a sufficient interest for intervention as of right. Two proposed intervenors, Payne Forest Products, Inc. and Spilka Wood Products Company, have existing contracts with the Forest Service which could be suspended or canceled as a result of the present litigation. There can be no doubt that interference with existing contractual rights constitutes the necessary "tangible threat to a legally cognizable interest" that we have required for intervention as of right. Allegheny Hardwood, the trade association, also represents lumber companies with existing contracts, see Dist. Ct. Op. at 6, and therefore, as a representative of these companies, has a legally cognizable interest which will be directly affected by the present litigation. See, e.g., Espy, 18 F.3d at 1207 (existing timber contracts of member companies give trade association "legally protectable property interests" necessary to satisfy intervention as of right).

Ridgway Lumber Company, while without an existing lumber contract, had successfully bid on one and would have entered into a contract with the Forest Service absent the present litigation. Its successful bid is a tangible interest which could be--indeed, has been--directly affected by the present litigation, whatever its eventual outcome. See, e.g., Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1494 (9th Cir. 1995) (when suit has "direct, immediate, and harmful effects" on third party's legally protectable interests, this satisfies the "interest" prong of Rule 24(a)(2)).

A more difficult case is presented with respect to proposed intervenors Brookville Wood Products, Inc. and

---

interest based upon a bare expectation, not anything in the nature of real or personal property, contracts, or permits." U.S. EPA, 995 F.2d at 1482; see also id. at 1485 ("The loggers in Portland Audubon had an interest in securing timber, but no existing legal right to it . . . ." (emphasis added)).

23

Northeast Hardwoods. Neither of these companies has an existing contract for cutting timber in the ANF, nor have they successfully bid on a contract which would have been consummated but for the present litigation. However, the district court found that these companies "generate the majority of their revenues from timber contracts with the [Forest Service] to cut timber in the Allegheny National Forest" and that they "are very dependent on[these] timber contracts." Dist. Ct. Op. at 5. I understand thisfinding, in light of the record, to mean that these companies have consistently been successful bidders in ANF logging contracts, that it is only an accident of timing that they do not have contracts at this juncture, and that--particularly given the remoteness of the area in which the companies operate--they are very likely to secure contracts in the near future if logging contracts are there to be bid (which will depend on the outcome of this litigation). In evaluating the interest of the companies without existing contracts, it is apparent that it is not an "actual" interest, but neither is it speculative. Under these circumstances, I cannot say that the majority is wrong when it finds that these companies also have the sufficient interest to meet our requirements for intervention as of right.

Finally, the government intervenors have an actual, direct interest in this litigation by virtue of their statutory right to a portion of the proceeds from contracts between logging companies and the Forest Service. The local governments are effectively limited partners with the named defendant in this case, having no control over the formation of the logging contracts but a vested right to a portion of the proceeds therefrom. Without this piggybacking on the named defendants, I would question whether the municipalities have a sufficient interest to intervene, solely based on their loss of revenue from reduced tax receipts. The majority is not clear about this distinction, emphasizing the "limited tax bases," Maj. Op. at 14, of the municipalities in question. In my view, it is only the statutory right to logging proceeds that gives the municipalities here a sufficient interest to intervene and to protect that interest from interference that could arise from this litigation.

24

IV.

As noted above, the majority does not clearly draw the line between interests sufficient for intervention under Rule 24(a)(2) and those not sufficient. To better illustrate where I believe this line is drawn, I consider the proposed intervention of hypothetical parties to the present case. The logging companies to whom we grant intervention today purchase supplies from other companies for the products they need to carry out their timber-cutting business. If the logging companies' contracts with the Forest Service are suspended or canceled, the supply companies could suffer a loss of business as the logging companies no longer need purchase supplies for timber-cutting. In addition, the logging companies employ workers who use their wages to purchase products and services in local establishments, such as gas stations, grocery stores, etc. Assume one of these establishments is a diner frequented by logging company employees. When the logging companies' contracts with the Forest Service are disrupted by this litigation, these employees may be laid off or their wages reduced. With less income, they might gather at the diner with less frequency. The diner clearly will suffer an economic harm, formally (if not directly) caused by the present litigation. The same would be true of local municipalities if they did not have the statutory right to a portion of the logging contract proceeds; they too would suffer an economic harm caused indirectly by the present litigation.

If the logging supply companies or the local diner were to petition for intervention as of right, should the district court find their interest sufficient to warrant intervention under Rule 24(a)(2)? I believe the majority's "elastic" approach at once gives the district court little guidance in answering this question, and gives it license to do whatever it wants. In contrast, I think it is clear that neither the Rule nor our prior jurisprudence in this area would permit the supply company or the diner to intervene as of right. While both of these businesses likely will suffer an economic harm from the litigation, in terms of both the nature and the reality of the interest, this harm is both too contingent and too remote from the litigation itself to be a legally cognizable

25

interest sufficient for intervention under Rule 24(a)(2). See, e.g., City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1042 (10th Cir. 1996) (supplier of electrical power to defendant had insufficient interest for intervention even though it would "benefit financially if[defendant] is allowed to continue to service its customers").

Unlike the logging companies and the local governments, which suffer an immediate, direct harm when the logging contracts are suspended--even if they somehow can replace their canceled contracts or lost revenue from some other source--the diner and supply company suffer any loss only down the line, after the logging companies have reduced their workers' wages or stopped ordering logging supplies. See, e.g., Montana v. United States Envtl. Protection Agency, 137 F.3d 1135, 1142 (9th Cir. 1998) (potential effect on property values from promulgation of new water quality standards is "a speculative and purely economic interest [which] does not create a protectable interest in litigation concerning a statute that regulates environmental, not economic, interests"). Further, such losses that the diner or supply company may suffer are not grounded in a legal right--contractual, property, or statutory--which is related to the litigation at hand. See, e.g., Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1495-97 (9th Cir. 1995) (only "tangible, concrete rights protected by" statute or contract constitute a sufficient interest under Rule 24(a)(2); purely economic injuries, pecuniary losses, or frustrated financial expectations are not sufficient interests).[4]

In a different context--the interpretation of the nation's antitrust laws--the Supreme Court has distinguished between parties injured by direct actions of an antitrust violator and those injured down the line (i.e., purchasers

_____

4. The same analysis holds for municipalities without a piggyback right who may suffer losses when the citizens (lumber company employees) or businesses (logging companies, supply companies, local establishments) within their communities have less income and pay fewer taxes. Unlike the actual municipalities and school districts at issue here, local governments without a direct statutory right to a share of the proceeds from logging contracts have neither the tangible interest nor the direct link to the litigation necessary for intervention under Rule 24(a)(2).

from the directly injured parties). See Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977). In Illinois Brick, the Court reasoned that "allowing indirect purchasers to recover using pass-on theories . . . would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." Id. at 740. Despite Rule 24's pragmatic underpinnings, the concern the Court expressed in Illinois Brick is instructive in the present context. Environmental litigation of the present type could potentially involve multiple layers of plaintiffs and defendants. The indirect effects from the alleged wrongdoing by the federal agency, as well as the collateral effects from the litigation itself, touch the lives of residents of the communities near the forests, visitors to the area, local businesses, municipalities and school districts, logging companies and their employees and suppliers, consumers of wood and paper products, transportation companies which have contracts to move the timber to mills, and so on. As in Illinois Brick, some line must be drawn lest these environmental cases (and other public law cases) become "massive multiparty litigations." We can-- and should--draw this line without sacrificing the pragmatism of Rule 24.

V.

Once we have established that a party has a sufficient interest for intervention as of right, we must determine whether "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a)(2). I note again that the majority fails to treat the interest prong and the impairment prong as separate requirements. The Rule, however, requires both a sufficient interest and that this interest might be impaired by disposition of the action in the party's absence. Therefore, I believe that the analysis, while remaining flexible and pragmatic, must be performed in such a manner as to ensure that intervention as of right is granted only to those parties meeting both requirements.

In the present case, it is clear that this litigation itself could practically impair the interests of all of the proposed

27

intervenors if the district court were to grant the injunctive relief sought by the plaintiffs pending a decision on the underlying dispute. See Appellees' Brief at 3 ("[T]he initial result of success in the litigation below will be a pause in timber cutting with regard to the two projects and in other areas of the [ANF] . . . ."). The logging companies' interest is in contracts to cut timber, either existing or certain to be entered into in the near future (absent the litigation). An injunction that suspends, cancels, or prevents future contracting by the Forest Service will directly and immediately affect this interest.5 Similarly, the local governments would immediately lose the income to which they are entitled from these contracts.

The only hope of preventing impairment would be if the proposed intervenors filed their own suit and argued that the Forest Service has acted in compliance with the relevant statutes and that, therefore, no injunction should issue. However, a contrary determination in the present case would have a stare decisis effect on this potential future litigation, leaving the proposed intervenors without legal recourse to protect their interests. As we said in Brody, supra, the practical impairment prong is satisfied if a judgment

> will have a significant stare decisis effect on [applicants'] claims, or if the applicants' rights may be affected by a proposed remedy.
>
> An applicant need not, however, prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief. The possibility of a subsequent collateral attack does not preclude an applicant from demonstrating that his or her interests would be impaired should intervention be denied.

_____

5. This is not a case like ManaSota-88, Inc. v. Tidwell, 896 F.2d 1318 (11th Cir. 1990), in which proposed intervenors could not point to any direct effect from the relief sought by plaintiff-environmental groups-- the
promulgation of new regulations by a federal agency--as it was "purely a matter of speculation" whether the proposed intervenors would be in violation of any new regulations, thereby increasing their costs of compliance. Id. at 1322.

28

957 F.2d at 1123 (citations omitted). All of the proposed intervenors meet this requirement in the present case.6

VI.

In sum, I believe that an increasingly clear, ifflexible, standard has developed in our Rule 24(a)(2) case law, which we should adhere to in this case and in future intervention situations, and which requires a searching analysis of each of the elements required for intervention as of right. I also believe that this jurisprudence, while not necessarily followed in the majority opinion, leads to the same result. I therefore concur in the judgment granting intervention to all of the proposed intervenors.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

6. I agree with the majority that the Service's interests do not necessarily
coincide with the logging companies and that, given the minimal standard for finding that an applicant's interests are not adequately represented, see Trbovich v. United Mine Workers , 404 U.S. 528, 538 n.10 (1972), all of the logging companies--and the local governments-- meet this final requirement for intervention.