**ANGLERS OF THE AU SABLE, Tim Mason, and Sierra Club (Mackinac Chapter), Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, and United States Bureau of Land Management, Defendants.**

No. 05–10152.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 8, 2008.

declaring that the United States Forest Service and the United States Bureau of Land Management did not comply with the National Environmental Policy Act when they found that a proposal that allowed Savoy Energy, L.P. to drill for oil and gas in an environmentally sensitive area of the Huron–Manistee National Forest would have no significant environmental impact. The lawsuit, which was commenced by environmental groups and a descendant of the donor of the Mason Tract—a 4,700–acre tract of old-growth forest designated as a semi-primitive non-motorized area—had been pending for over three years, with the full knowledge of Savoy Energy. Savoy took no steps to intervene in the case or even seek to file an amicus brief while the case was pending in this Court. Then, almost two months after the judgment was entered, Savoy filed the present motion to intervene. Under the present circumstances, the Court believes that Savoy's motion is untimely, and because the defendants have filed a notice of appeal, the Court has no jurisdiction to grant the motion. Therefore, the motion to intervene will be denied.

I.

Savoy Energy, L.P. holds three federal and three state oil and gas leases for approximately 640 acres of the land in the Huron–Manistee National Forest in Crawford County, Michigan. In May 2003, Savoy filed an application with the Bureau of Land Management to drill a directional gas well into one of its lease holdings, which involved clearing, grading, and leveling a 3.5–acre well pad, preparing a production facility approximately 1.5 miles from the well, and constructing a pipeline connecting the two locations. Savoy withdrew its initial application in September 2003, responding to public pressure over the environmental effects of its proposed project, but it filed a second application for

Aaron Isherwood, Sierra Club, San Francisco, CA, Bruce M. Pregler, FACCA, Richter, Troy, MI, Marianne G. Dugan, Eugene, OR, Mark R. Daane, Hooper, Hathaway, Ann Arbor, MI, for Plaintiffs.

Gregory Daniel Page, U.S. Department of Justice, Washington, DC, Janet L. Parker, U.S. Attorney's Office, Bay City, MI, for Defendants.

## OPINION AND ORDER DENYING MOTION TO INTERVENE BY SAVOY ENERGY, L.P.

DAVID M. LAWSON, District Judge.

On July 10, 2008, this Court filed an opinion, order, and judgment in this case

drilling in the same area shortly thereafter.

In August 2004, the Forest Service issued an Environmental Assessment and a Biological Assessment, and on January 1, 2005 Forest Supervisor Leanne M. Martin issued a Decision Notice and Finding of No Significant Impact, explaining that the environmental impact of the project was not expected to be significant. The Bureau of Land Management approved Savoy's application for drilling on August 4, 2005. Before that, however, the plaintiffs in this case, Anglers of the Au Sable, Tim Mason, and the Mackinac Chapter of the Sierra Club, commenced the present action on June 8, 2005. On December 2, 2005, the plaintiffs filed a motion for a preliminary injunction, asking this Court to halt the commencement of the drilling project pending a final decision. On December 7, 2005, the Court granted preliminary injunctive relief. *Anglers of the AU Sable v. United States Forest Serv.*, 402 F.Supp.2d 826 (E.D.Mich.2005). Following that decision, the Court referred the matter back to Magistrate Judge Charles E. Binder for further proceedings consistent with an original order of reference. The parties' cross motions for summary judgement followed, and the magistrate judge issued his report on June 20, 2006 recommending a ruling in favor of the plaintiffs.

The defendants filed timely objections to the magistrate judge's report, and the Court held the case under advisement until the July 2008 final decision. During all this time, Savoy was not heard from, although the case received considerable public attention, and the preliminary injunction prevented Savoy from proceeding with its drilling project. Then, once the smoke of battle cleared, Savoy emerged from the woods on September 4, 2008 to file its motion to intervene, seeking to urge an appellate court to walk through the battlefield, as the saying goes, and shoot the wounded. Savoy also filed a notice of appeal that day, and the government filed one of its own the next day.

## II.

Rule 24(a) of the Federal Rules of Civil Procedure entitles certain parties to intervene in a lawsuit as of right. Pursuant to Rule 24, there are two types of intervention: intervention as of right and permissive intervention. Rule 24(a), dealing with intervention by right, states:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). With respect to both types of intervention, the Sixth Circuit has held that "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak–Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir.2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir.1991)). Of course, "this does not mean that Rule 24 poses no barrier to intervention at all." *Ibid.*

> [The Sixth Circuit has] explained that a proposed intervenor must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir.2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir.1999)).

■ Savoy argues that it satisfies all four factors and it should be permitted to join the case on appeal. The Court disagrees. Although some courts have allowed intervention in a case after the final judgment has been entered, *see Hill v. Western Elec. Co.*, 672 F.2d 381, 387 (4th Cir.1982), the better practice requires an assessment of five timeliness factors identified by the Sixth Circuit "in the context of all relevant circumstances." *Stupak–Thrall*, 226 F.3d at 472 (internal quotation marks omitted). The Sixth Circuit considers:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 473–74.

Considering these factors, the Court concludes that Savoy's delay in making its decision to join this lawsuit has worked a disservice to the litigants, including the government, and the Court. It is unquestionably true that Savoy's interest in the case is narrower and more focused than the government's in defending the finding of no significant environmental impact. It is obvious that Savoy has a direct pecuniary stake in the outcome of that dispute; it argues that delay in allowing it to drill works an economic disadvantage upon it. That makes it all the more baffling that Savoy would wait in the wings until the matter is decided, given the length of time the case remained pending in this Court, only now seeking to advance its arguments. By taking that course, Savoy presumably endeavors to present fresh arguments to an appellate court, which will have been unreviewed by the lower court. This Court will have been deprived of any new information from Savoy that could have shed light on the dispute. The parties to the case will not have the opportunity to confront the arguments in the trial court or seek to expand the record in this administrative review. Savoy's tardiness does not serve the interests of justice.

■ And the delay has resulted in a jurisdictional problem with Savoy's request. Although it is well-established that would-be intervenors may ask for permission to intervene from a district court at this stage of the proceedings, *see United Airlines v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); Charles A. Wright & Arthur R. Miller, 15A Fed. Practice & Procedure, § 3902.1 ("Many cases establish that intervention can be sought in the district court for the purpose of appealing a judgment that has an adverse effect on the intervenor. Intervention is permitted both when no party is appealing and when an appeal is being taken by some party."), the filing of a notice of appeal divests a district court of jurisdiction over the case, except for matters in aid of appeal, *Dixon v. Clem*, 492 F.3d 665, 679–80 (6th Cir.1997); *Post v. Bradshaw*, 422 F.3d 419 (6th Cir.2005).

■ The rationale behind divestiture of jurisdiction of the district court once a notice of appeal is filed is that two different courts should not have simultaneous jurisdiction over the same matter, and the district court should not alter the scope of the judgment which is before an appellate court. *Advey v. Celotex Corp.*, 962 F.2d 1177, 1180 (6th Cir.1992). Nevertheless,

Rule 4 of the Federal Rules of Appellate Procedure allows a district court to retain jurisdiction over a limited range of proceedings after a notice of appeal is filed:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

Fed. R.App. P. 4(a)(4)(A). A district court may opt to resolve these motions pending at the time of filing an appeal. *Dixon v. Clem*, 492 F.3d at 679 (noting that when "the district court affirmatively opts to maintain jurisdiction even after the filing of the notice of appeal for the purpose of resolving still-pending motions, its jurisdiction expires following the resolution of the last motion."). However, a motion to intervene is not mentioned in Rule 4's list of motions.

The Sixth Circuit has held that a notice of appeal divests a district court of jurisdiction to decide a motion to intervene. *See Bowling v. Pfizer, Inc.*, No. 92–4287, 14 F.3d 600, 1993 WL 533620 (6th Cir. Dec. 21, 1993) (unpublished); *see also Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir.1983) (holding that a notice of appeal divests a district court of jurisdiction to consider a motion for intervention). In a case with procedural facts similar to the case presently before the Court, the Seventh Circuit also found that a district court was without jurisdiction to rule on a motion to intervene when the original plaintiff filed notice of appeal on the same day as the applicant moved for intervention. *See Roe v. Town of Highland*, 909 F.2d 1097 (7th Cir.1990). In *Roe*, the applicant moved to intervene one day before the time limit for lodging an appeal expired. The Seventh Circuit suggested that the moving party "should allow the district court sufficient time to rule on the motion" by waiting to file a notice of appeal, and that the court was without jurisdiction to hear the matter after the would-be intervenor filed its notice of appeal. *Id.* at 1099. The Court elaborated on a few procedural mechanisms to preserve an opportunity for appeal and yet adjudicate the motion for intervention at the district court level:

It is possible, however, that a timely motion may not have been acted upon by the time an appeal must be filed. The district court's non-action places the putative intervenor in a difficult situation. Nevertheless, several avenues of relief remain open. The putative class member can file an emergency motion with the district court detailing the need for a ruling so that a timely appeal may be taken. Indeed, the district court may enlarge the time for filing an appeal (up to 30 days), as permitted by Fed. R.App. P. 4(a)(5). Finally, if the motion to intervene has not been acted upon within the time to appeal, the putative class member should nonetheless file a timely notice of appeal. Although the filing of the notice would deprive the district court of power to act on the motion to intervene, "the cause may be remanded for that purpose." 9 Moore's Federal Practice ¶ 203.06 at 3–24 n. 10 (2d ed.1990). In short, a putative intervenor has several viable options for preserving the right of appeal until the district court rules on the intervention motion.

*Id.* at 1099–1100.

In this case, Savoy did not take advantage of any of the suggested procedural

devices. Savoy had plenty of opportunities to intervene before it or any one else filed a notice of appeal. It is doubtful that this Court may grant that relief now.

Another difficulty in allowing Savoy to intervene is doubt about whether Savoy has a protectable legal interest, given the posture of this case. As noted above, there can be no question that Savoy had a financial stake in the outcome. But there exists a division in the circuits over whether private parties can intervene by right in cases brought against the government under the National Environmental Policy Act (NEPA). Some courts have held that because NEPA requires action only by the government, only the government is a proper defendant under the statute, and private parties cannot intervene in a suit. *See, e.g., Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 309–10 (9th Cir.1989) (affirming denial of Rule 24(a) motion); *Wetlands Action Network v. U.S. Army Corps of Engineers*, 222 F.3d 1105, 1114 (9th Cir.2000) (limiting private party's intervention in a NEPA action to a remedial stage); *Wade v. Goldschmidt*, 673 F.2d 182, 186 (7th Cir.1982) (holding that "[i]n a suit such as this, brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants."). Other circuits have adopted a more flexible standard without a *per se* rule that private parties cannot intervene in a NEPA action. *See, e.g., Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir.1994) (reversing denial of Rule 24(a) motion), *and Kleissler v. United States Forest Serv.*, 157 F.3d 964, 974 (3d Cir.1998) (Becker, J. concurring) (articulating a more flexible standard of private parties' intervention); *Natural Res. Defense Council, Inc. v. U.S. Nuclear Regulatory Comm'*, 578 F.2d 1341 (10th Cir. 1978) (allowing intervention as of right for a potential recipient of a license for operation of a uranium mill in a NEPA action).

The Sixth Circuit has not confronted the issue expressly, although it has reviewed cases in which private litigants have intervened as defendants. *See Save Our Cumberland Mountains v. Kempthorne*, 453 F.3d 334 (6th Cir.2006) (noting, without any objections, that the trial court allowed intervention of a regulated coal company as a defendant). Allowing Savoy to intervene at this late date, when its basic right to do so remains in doubt, is imprudent.

The third factor—that the proposed intervenor's ability to protect its interest may be impaired in the absence of intervention—is not difficult to meet. *See Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.") (quoting *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir.1997)); *see also Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir.1992) (holding that potential *stare decisis* effects of the decision are sufficient for finding an impairment of interest). Nonetheless, the genuineness of that argument is cast into doubt in this case, where Savoy was content to observe the lawsuit from the sidelines and avoid involvement when the issues were under active consideration in this Court.

Savoy also makes the point that the parties already before the Court cannot protect its interest adequately. The case law tends to support that proposition when the party before the court is the government. Although the government's interest in the outcome of the dispute might advance the interests of a private entity to a substantial degree, the case may still call for some arguments that the government must abandon under a sense of public duty, whereas the prospect of losing millions of dollars will compel the

private entity to advance them. *See Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1255 (10th Cir.2001) (citing *Mausolf v. Babbitt,* 85 F.3d 1295, 1302–04 (8th Cir. 1996)) ("When managing and regulating public lands, to avoid what economists call the 'tragedy of the commons,' the Government must inevitably favor certain uses over others."); *Sierra Club v. Glickman,* 82 F.3d 106, 110 (5th Cir.1996) (*per curiam*) (government representation of broad public interest will not necessarily coincide with would-be intervenor's narrower interest even though they share common ground); *Conservation Law Found. v. Mosbacher,* 966 F.2d 39, 44–45 (1st Cir.1992) ("a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity"); *In re Sierra Club,* 945 F.2d 776, 779–80 (4th Cir.1991) (although a would-be intervenor and a government entity share objectives, the governmental entity does not represent the private company's interests adequately due to an obligation to represent interests of general public including those members of the public whose interests may not coincide with the private entity's interests).

On balance, however, the Court believes that Savoy Energy may not intervene by right in the lawsuit after it is over. Since Savoy made no arguments in this Court as to merits of the case, a request to file an amicus brief in the court of appeals that supports the government's position would serve essentially the same purpose as intervention, since advancing new arguments in the appellate court is discouraged. *See St. Marys Foundry, Inc. v. Employers Ins. of Wausau,* 332 F.3d 989, 996 (6th Cir.2003) (observing that "propounding new arguments on appeal in attempting to prompt us to reverse the trial court—arguments never considered by the trial court—is not only somewhat devious, it undermines important judicial values")

(quoting *Estate of Quirk v. Comm'r,* 928 F.2d 751, 756–57 (6th Cir.1991)).

■ Nor is permissive intervention appropriate. Under Rule 24(b), the requirements for permissive intervention are that the application be timely, the applicant's claim or defense shares a common question of law or fact with the main action, and the intervention does not unduly delay or prejudice the adjudication of the rights of the original parties. As noted above, Savoy's motion to intervene is untimely, it is doubtful that the Court has jurisdiction to allow it after the notices of appeal and cross-appeal have been filed, and Savoy's delay has prejudiced the parties before the Court.

## III.

The Court does not find that Savoy Energy, L.P. ought to intervene in this case at the present stage of proceedings, that is, after the lawsuit has been adjudicated by final judgment and the case is pending on appeal.

Accordingly, it is **ORDERED** that the motion to intervene filed by Savoy Energy, L.P. [dkt. # 69] is **DENIED.**