

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-2005

# Liberty Mutl Ins Co v. Treesdale Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-2615

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Liberty Mutl Ins Co v. Treesdale Inc" (2005). *2005 Decisions.* Paper 608.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/608

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-2615

LIBERTY MUTUAL INSURANCE COMPANY

v.

TREESDALE, INC.; PITTSBURGH METALS
PURIFYING COMPANY


*Walter Piatt; Eugene McCue, Jr.; Danny R. Bailey;
Dennis J.
Bailey, Co-Executors of the ESTATE OF JOHN R.
BAILEY; Mary
Boniey, personal representative of the ESTATE OF
JOSEPH BONIEY;
Wilma Chernay, Executrix of the ESTATE OF EDWARD
S. CHERNAY;
Robert S. Perkins, Executor of the ESTATE OF RONALD
L. PERKINS,


Proposed Intervenors/Appellants


*Pursuant to Rule 12(a) F.R.A.P.

1

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 02-cv-02179)
District Judge: Hon. Arthur J. Schwab

Submitted under Third Circuit LAR 34.1(a)
May 5, 2005

Before: McKEE, SMITH and VAN ANTWERPEN,
Circuit Judges

(Opinion filed: August 15, 2005)

Frederick J. Francis, Esq.
Beth A. Slagle, Esq.
Quinn A. Johnson, Esq.
Meyer, Unkovic & Scott
1300 Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

   *Attorneys for Appellants*

John C. Sullivan
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 13th Floor
Philadelphia, PA 19103

   *Attorney for Appellee*

2

OPINION

McKEE, <u>Circuit Judge</u>.

The appellants or the decedents they represent (hereinafter collectively referred to as "Appellants") claim to have sustained bodily injury from exposure to asbestos-containing products manufactured or sold by Pittsburgh Metals Purifying Company ("PMP").[1] They appeal the district court's denial of their motion to intervene in an insurance coverage dispute between Liberty Mutual Insurance Company and PMP, its insured. For the reasons that follow, we will affirm.

## I. FACTS

PMP is alleged to have manufactured and sold asbestos-containing side boards and rings which were marketed and sold to the steel industry under the trade name, "Soffelex," from approximately 1966 through 1975. The side boards and rings were used to maximize temperature during the steel manufacturing process. PMP has been named as a defendant, additional defendant or third-party defendant, in numerous lawsuits initiated by plaintiffs who allege that they have suffered bodily injury as a result of exposure to these asbestos-containing products. A small subset of these plaintiffs seek to

---

[1]PMP is a division of Treesdale, Inc. PMP and Treesdale refer to themselves as "PMP" in their briefs in this case, and they refer to themselves as "Treesdale" in the companion insurance coverage dispute.

intervene in an insurance coverage dispute between PMP and its insurer. Several thousand such asbestos claims have been filed to date, and Liberty Mutual has provided a complete defense to PMP against these asbestos claims. Before initiating this suit for a declaratory judgment, Liberty Mutual had paid judgments and/or settlements on behalf of PMP in excess of $5,000,000, the total coverage available under its Liberty Mutual primary policies. Upon exhaustion of the primary policies, PMP demanded that Liberty Mutual continue to defend and indemnify under Umbrella Excess Liability Policies ("UEL policies") issued by Liberty Mutual, and Liberty Mutual claims that it did so.

Liberty Mutual contends that it has now paid or committed to pay more than $5,000,000 in additional settlements, an amount which it believes has also exhausted the coverage under the UEL policies for these claims. In addition, Liberty Mutual claims to have spent several million dollars in defending PMP against the bodily injury claims. According to Liberty Mutual, PMP agrees that coverage is no longer available under the primary policies for the asbestos claims against PMP.

Appellants claim that from 1975 through 1984, Liberty Mutual issued ten UEL policies to PMP with total limits in excess of $25 million. Appellants also claim that PMP is insolvent except for the UEL policies. Liberty Mutual disputes that allegation arguing that there is no evidence of record that PMP is insolvent.

## II. DISTRICT COURT PROCEEDINGS

4

Liberty Mutual filed this declaratory judgment action against PMP and Treesdale, Inc., PMP's parent company, seeking a declaration that it will have no further duty to defend or indemnify PMP once $5 million has been paid under the UEL policies. Appellants sought to intervene claiming that Liberty Mutual's obligation under the UEL policies is $26 million and arguing that their right to recovery for their asbestos-related injuries could be eliminated in the declaratory judgment action instituted by Liberty Mutual against PMP.

Appellants filed a motion to intervene pursuant to Fed.R.Civ.P. 24. In their reply to Liberty Mutual's opposition to their motion, Appellants for the first time asserted that they were entitled to intervene as of right because they are indispensable parties under Fed.R.Civ.P. 19(a).

The Magistrate Judge's Report and Recommendation recommended that the district court deny the motion, and dismiss a number of related motions as moot.[2] Appellants filed objections to the R&R, and Liberty Mutual responded to those objections. Appellants were then given leave to file a supplemental brief in support of their objections. In the

---

[2]The proposed intervenors also sought to intervene on behalf of a proposed class of all individuals who have claims for asbestos-related bodily injury against PMP and who allege a bodily injury that triggers coverage of the Liberty Mutual policies between the years 1975 through 1985. Because the district court denied their motion to intervene as individuals, it dismissed their motion to intervene on behalf of the class.

supplemental brief, filed nine months after the initial motion to intervene, Appellants raised an entirely new argument under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Appellants now argue that the district court should have applied state law in determining whether they are indispensable parties to the declaratory judgment action.

The district court adopted the Magistrate Judge's R&R and entered an order denying the motion to intervene. This appeal followed.[3]

## III. DISCUSSION

Appellants make a number of arguments in support of their contention that the district court erred in not allowing them to intervene; each is considered separately.

### A. Appellants' Interest Under Fed.R.Civ.P. 24(a).

Rule 24 provides, in relevant part:

> **(a).** **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an

---

[3]The district court also granted summary judgment to Liberty Mutual in the underlying declaratory judgment action against Treesdale and PMP. Treesdale/PMP has filed an appeal from that judgment at No. 04-4172, and the opinion in that case is being filed with this opinion.

6

interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). We have held that a litigant seeking intervention as of right under Rule 24(a)(2) must establish 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998). "Each of these requirements must be met to intervene as of right." *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citation omitted).

The district court denied the motion to intervene based upon its conclusion that Appellants did not have a "sufficient interest in the litigation;" the second element of the Rule 29(a)(2) inquiry.[4] Given that ruling, the district court did not

---

[4] We "will reverse a district court's determination on a motion to intervene of right if the court has applied an improper legal standard or reached a decision that we are confident is incorrect." *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir.1987).

7

discuss the other three requirements for intervention as of right.

To establish a sufficient interest for intervention, Appellants must demonstrate "'an interest relating to the property or transaction which is the subject of the action.'" *Mountain Top*, 72 F.3d at 366 (quoting Fed.R.Civ.P. 24(a)(2)).

> While the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition, some general guidelines have emerged. . . . [A]n intervenor's interest must be one that is significantly protectable. [This means that] the interest must be a legal interest as distinguished from interests of a general and indefinite character. The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene. This interest is recognized as one belonging to or one being owned by the proposed intervenors. . . . In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene. . . . While a mere economic interest may be insufficient to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund. Thus, when a particular fund is at issue, an applicant claims an interest in the very property that is the

subject matter of the suit.

*Mountain Top*, 72 F.3d at 366 (citations omitted).

Appellants contend that they satisfy the second prong of our inquiry under *Mountain Top* because they have an interest in a specific fund, *viz*., the Liberty Mutual UEL policies. According to Appellants, the insurance proceeds "constitute a specific source or fund that is and has been providing compensation to asbestos victims like [Appellants] for years." Appellants' Br. at 17. We disagree.

In *Mountain Top*, we did find that a proposed intervenor's interest in a specific fund can be sufficient to allow intervention as of right. *See* 72 F.3d at 366. However, the nature of the fund there was quite different from the fund at issue here.

*Mountain Top* concerned the disbursement of insurance proceeds that the insurance carrier had already paid to a condominium association to compensate for a loss caused by a hurricane. The condominiums were governed by the Mountain Top Condominium Association ("MTCA"), which was comprised of all of the condo owners. The condo owners delegated certain powers and duties, including the repair and restoration of the condos, to the MTCA's Board of Directors pursuant to the MTCA's bylaws and certain Virgin Islands' statutes. Pursuant to the MCTA's by-laws, the Board was required to appoint an insurance trustee to approve the adjustment of any loss and to receive all insurance proceeds in excess of $50,000.

However, the Board did not comply with the by-laws. Instead, the Board took it upon itself to approve the insurance adjustment and to determine how the reconstruction and repair proceeds were to be distributed. Accordingly, the Board adjusted the hurricane loss and received $1,538,163 from its insurance carrier. It then deposited the insurance proceeds into a separate account designated for hurricane reconstruction.

However, instead of applying all of the proceeds to repairing the hurricane damage, the Board decided to distribute some of the proceeds to the individual condo of owners based on the size of the various units. Under this plan, owners of large units would have received more from the insurance proceeds than owners of smaller units regardless of the damage sustained. Moreover, there was no requirement that the distributed funds be used to benefit the condo units.

As part of the reconstruction plan, the Board entered into an agreement with Dave Stabbert Master Builder, Inc., for construction work. However, the Board became dissatisfied with Stabbert's work and a dispute arose between them. Stabbert filed mechanics' liens against the condos and the Board responded by suing Stabbert in the district court. The Board alleged, *inter alia*, fraudulent misrepresentation and breach of contract. Stabbert then filed counterclaims against the Board.

In time, Stabbert agreed to release the liens and the Board deposited $250,000 of the insurance proceeds into escrow in the registry of the district court. The $250,000 was all that remained of the hurricane restoration fund. Then, pursuant

to the district court's order, the Board and Stabbert proceeded to mediation.

The Seipels - a couple that owned two condos that had been damaged by the hurricane filed suit in territorial court alleging that the Board had violated the MTCA's by-laws by, *inter alia*, failing to appoint an insurance trustee to manage the distribution of the insurance proceeds. When the Seipels became aware that any settlement between the MTCA and Stabbert might deplete all of the remaining funds allocated for repair of the hurricane damage, they attempted to intervene in the mediation between MTCA and Stabbert. They argued that successful mediation between MTCA and Stabbert would result in the distribution of the entire $250,000 escrow deposit.

The district court denied the motion to intervene, holding that the Seipels' "only conceivable interest in this lawsuit lies in the fact that if [MTCA] is successful, plaintiff may be in a somewhat better position to satisfy any judgment which the Seipels may succeed in obtaining in the Territorial Court, than would be the case if the plaintiff loses this lawsuit." 72 F.3d at 365. On appeal, we reversed.

We began our analysis by noting that the $250,000 in escrow was to be held in trust by an insurance trustee for each condo owner under the MTCA's by-laws and Virgin Islands statutory law. Thus, the funds in escrow "[were] assets of an express trust, of which the individual apartment owners [were] intended beneficiaries." *Id.* at 367. Consequently, the apartment owners "[had] a property interest in the trust res that [was] enforceable either in law or in equity." *Id.* (citation

11

omitted). In addition, the apartment owners "[had] an interest in seeing that the assets of the trust [were] not diverted in a manner that [would] defeat the purpose of the trust." *Id.* We reasoned that while the Seipels may not have had an interest in the merits of the litigation between MTCA and Stabbert, "they [did] have an interest in the property over which the court [had] taken jurisdiction." *Id*. at 368. Accordingly, we held that "they [had] an interest in being heard with respect to the disposition of that fund." *Id.* "[S]uch an interest [was] sufficient to support an applicant's intervention as of right." *Id.*

Thus, the nature of the fund at issue in *Mountain Top* differed radically from the "fund" here. The insurance proceeds in *Mountain Top* were required by the MTCA by-laws and by a Virgin Islands' statute to be held in trust for the benefit of all condo owners – including the Seipels. However, Appellants here have no property interest in the Liberty Mutual UEL policies nor do they have any other legally protectable interest in the policies. Rather, they have the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right. *See Mountain Top*, 72 F.3d at 366 ("a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."). The proceeds of the policies are not being held in an escrow account that they have a legal interest in as was the case in *Mountain Top*.

Appellants argue that, like the proposed intervenors in *Mountain Top*, they have a statutorily created interest in the Liberty Mutual UEL policies under the Pennsylvania Insurance Insolvency Act (the "Act"). The Act provides:

No policy of insurance against loss or damage

12

resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, . . . shall hereafter be issued or delivered in this State by any corporation, or other insurer, authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy . . . .

40 P.S. § 117. However, the Act only applies if a judgment has been obtained against an insured, and then only if execution is returned unsatisfied because of the insured's insolvency or bankruptcy. That bridge has not yet been crossed. Even assuming that Appellants' claim that PMP is insolvent is correct, PMP has not yet been adjudicated a bankrupt, and no execution has been returned unsatisfied because of insolvency or bankruptcy. Thus, even if we take Appellants' claim of inevitable bankruptcy at face value, Appellants would still not qualify for protection under the Act.

Appellants cite no controlling authority to support their argument that plaintiffs who have asserted tort claims against the insured can intervene as of right in an insurance coverage declaratory judgment action between the insured and its insurer. Instead, they cite *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991). There, court did allow intervention as of right, but we are not persuaded that *Teague* supports the same result here. In *Teague*, a class of plaintiffs in a separate action moved to

13

intervene in a suit filed by the insurer of a religious organization's media operation against individuals within the organization. Plaintiffs sought a declaration that it had no obligation to pay for claims asserted against the individuals in the separate action. The Court of Appeals for the Fourth Circuit stated:

> the [proposed intervenors] stand to gain or lose by the direct legal operation of the district court's judgment on [the insurer's] complaint. After seeking a declaratory judgment that it is not liable under [the policy] with regard to the class action, [the insurer] cannot now be heard to claim that the [proposed intervenors] lack a sufficient interest to oppose such declaratory judgment.

*Id.* at 261. Accordingly, the court held that the proposed intervenors' legally protectable interest was sufficient to warrant intervention as of right. *Id.*

However, the result in *Teague* is inconsistent with our analysis in *Mountain Top*. As we have already stressed, in *Mountain Top*, we said that "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Mountain Top*, 72 F.3d at 366. Moreover, there were additional facts supporting intervention in *Teague* which are not present here. The proposed intervenors in *Teague* had already obtained a judgment against the insured in the separate action. Therefore, *Teague* is not as helpful to Appellants as they would have us believe.

14

Appellants next argue that the district court erred by finding that they were not entitled to intervene as of right because their interest in the declaratory judgment action is "contingent" upon (or a "mere expectancy" of) success in an underlying suit, i.e., their tort claims against PMP. In so holding, the district court relied on *Liberty Mutual Ins. Co. v. Pacific Indemnity Co.*, 76 F.R.D. 656 (W.D. Pa. 1977). There, a plaintiff in an underlying personal injury action sought to intervene in an insurance coverage declaratory judgment action. Koenig, the plaintiff, had been injured while diving into a swimming pool manufactured by Muskin Corporation and sold by W.T. Grant Company. He sued the manufacturer and the purchaser in state court. Muskin was insured by Pacific Indemnity, and had an excess liability policy with American Home. Grant was insured by Liberty Mutual. Liberty Mutual filed a declaratory judgment action in the district court to determine whether Pacific Indemnity and American Home owed a duty to defend and indemnify Grant for any judgment Koenig might recover in his personal injury action.

Koenig attempted to intervene in the declaratory judgment action as of right, arguing that because the policies at issue "vary significantly in coverage, a judicial determination of the obligation, if any, of Pacific Indemnity and American Home to indemnity [Grant] may affect the amount of money he may eventually collect if he wins a judgment in the state court suit." 76 F.R.D. at 658. The district court rejected Koenig's argument. The court ruled that, since the contested issues of fact had to be resolved before Koenig could recover a judgment, "his interest in intervention is contingent and not direct and consequently, not the kind of interest courts have required for

15

intervention under Rule 24(a)." *Id.* at 660; *see also Id.* at 658 ("[A]n interest contingent upon a favorable result in an associated lawsuit is not an interest sufficient to require intervention under Rule 24(a).").

Appellants contend that the district court erred by relying on *Pacific Indemnity* because Liberty Mutual has been indemnifying PMP for the asbestos-related injuries of thousands of personal injury plaintiffs for years. Therefore, Appellants argue that the their "ability to recover a judgment against the insolvent PMP through Liberty Mutual insurance funds can hardly be considered 'contingent' or a 'mere expectancy.'" Appellants Br. at 21. However, Appellants are putting the proverbial cart before the proverbial horse. Obviously, Appellants who have neither settled their claims against PMP nor obtained a judgment, still must prove the merits of their cases and establish causation.[5] The fact that Liberty Mutual has been indemnifying PMP for years does not make Appellants' claimed interest in the UEL policies significantly less contingent upon their success in their underlying personal injury actions.

Appellants also criticize the district court's reliance on

---

[5]Appellants admit that four of their members have settled with PMP and have been paid by Liberty Mutual. Consequently, there is no longer a live case or controversy as to those Appellants. At a minimum, therefore, the motion to intervene appears to be moot as to them.

16

*Pacific Indemnity* because there, unlike here, the dispute involved two insurers arguing about which one had to indemnify and defend a defendant. However, that is a distinction without a difference. The intervention in *Pacific Indemnity* was expressly based upon Koenig's claim that a determination of the insurer's obligation could affect the amount of money he might collect from his personal injury suit. That is precisely what Appellants argue to support their attempt to intervene as of right.

Moreover, the holding in *Pacific Indemnity* is thoroughly consistent with the general principle announced in *Mountain Top* that "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." 72 F.3d at 366. In fact, in *Mountain Top*, we commented that the district court's denial of the Seipels' motion to intervene as of right would have been correct if the Seipels' "only interest in the present case was to ensure that MTCA would have sufficient resources to satisfy any judgment they may be able to obtain in the territorial court." *Id.* That is precisely the situation here.

Appellants also claim that the district court erred in denying their motion to intervene as of right because the ruling ignored our decision in *Kleissler v. United States Forest Service*, 157 F.3d 964 (3d Cir. 1998). They claim that we there criticized prior caselaw holding that contingent or expectant interests are inadequate for intervention as of right. In *Kleissler*, lumber companies and others sought to intervene in

17

a suit brought by environmentalists against the Forest Service. The "intervenors" argued that the Forest Service violated the National Environmental Policy Act ("NEPA") by approving two projects that permitted substantial tree cutting in the Allegheny National Forest. They sought an injunction to halt all logging activity and suspend or cancel contracts for logging in the forest.

The district court held that only those lumber companies with existing contracts under the new projects had a sufficient interest to support intervention. We reversed. We held that even the timber companies that had not yet received contracts under the challenged plan had a sufficient interest to intervene as of right. We based that decision on those companies' longstanding reliance on contractual relations with the Forest Service and their "considerable stake" in ensuring that the new projects remain in place. 157 F.3d at 973.

Appellants take their cue from the timber companies that did not have contracts and claim a "considerable stake" in ensuring that the UEL policies remain in place so that they can be compensated for their asbestos-related injuries. They thus rely upon the *Kleissler* rationale in arguing that they have an interest sufficient to warrant intervention as of right.

However, *Kleissler* is not an insurance case, and it certainly could not overrule *Mountain Top*.[6] We agree with

---

[6] Absent circumstances not present here, a panel of this court has no authority to overturn a published decision of a prior

18

Liberty Mutual's contention that *Kleissler* "stands only for the proposition that a Court should not apply a mechanical approach when evaluating the relevant interests for intervention, but instead should examine the facts to determine whether the suit would directly alter contractual or other legally protectable rights of the proposed intervenors." Liberty Mutual's Br. at 26.

Moreover, Appellants are not in the same position as the timber companies in *Kleissler*. The latter had a history of contractual relations with the Forest Service and an interest in seeing that new projects remained in place. Here, however, Appellants have no contractual relationship with either Liberty Mutual or PMP, and the declaratory judgment action between Liberty Mutual and PMP will not have an immediate, adverse effect on them. Rather, the impact is collateral and (given the dispute about PMP's solvency) speculative. At most, the declaratory judgment action may impact their ability to collect any judgment obtained in their personal injury actions. However, that is not enough to support intervention of right under *Mountain Top.*

Appellants further argue that they should be permitted to intervene as of right because PMP is insolvent and lacks sufficient funds to either satisfy judgments or to adequately defend their interests. They claim that in a letter to their counsel, dated July 21, 2003, PMP's counsel advised that PMP

---

panel of the court. *See Reich v. D. M. Sabia Co*., 90 F.3d 854, 858 (3d Cir. 1996).

19

is "no longer in business and [has] no material assets other than the insurance policies issued by Liberty Mutual covering Asbestos Claims."  Therefore, argue Appellants, if their asbestos claims are not covered by the UEL policies, PMP will be unable to satisfy any judgments whatsoever.  According to them, if they are not allowed to intervene and Liberty Mutual "escapes its defense and indemnification obligations under the policies, the intervenors will have no adequate remedy in their underlying action."  Appellants' Br. at 26.  In addition, Appellants claim that because PMP is insolvent, it does not have sufficient funds to adequately defend the declaratory judgment action and thereby adequately represent their interests. In Appellants' view, this counsels in favor of intervention.

These arguments are based in part on *New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549 (D.R.I.1986).  There, a boat operated by Greaves collided with another boat.  Two people in the other boat were injured, and one later died from her injuries.  The injured passengers brought a personal injury action against Greaves in state court.  Shortly before that suit was brought in state court, New Hampshire Insurance Company filed a declaratory judgment action in district court to determine the validity of a $300,000 liability policy it had issued to Greaves.  The insurer alleged that the policy should be rescinded because of alleged misrepresentations by Greaves.  It was undisputed that, absent the liability policy, Greaves had insufficient assets to either satisfy a judgment or adequately defend the insurer's declaratory judgment action, and the personal injury plaintiffs therefore sought to intervene as a matter of right.  The district court granted intervention because Greaves did not have sufficient assets to satisfy a judgment or

20

adequately defend the declaratory judgment action.

As we noted above, Liberty Mutual disputes whether PMP is insolvent. Liberty Mutual contends that Appellants' claim of PMP's insolvency is baseless. Liberty Mutual points to the fact that PMP hired counsel, answered the complaint and asserted a counterclaim, filed a summary judgment motion and otherwise appropriately and aggressively litigated the declaratory judgment action. PMP filed objections to the R&R, and has appealed the district court's adoption of the R&R. *See* n.3, *supra*. We agree that PMP's active participation in the declaratory judgment action undermines the claim that PMP is insolvent and unable to defend itself against potential lawsuits.

Appellants final argument in this portion of their appeal is that the district court erred in failing to recognize that their interests could be impaired by *stare decisis* and that this possibility creates a legally sufficient interest to warrant intervention as of right. They cite *Brody v. Spang*, 957 F.3d 1108 (3d Cir. 1992), where we wrote, in relevant part, as follows:

> Once an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit. Under this element of the test, the [proposed intervenors] must demonstrate that their legal interests may be affected or impaired, as a practical matter by the disposition of the action. In making this determination, we are required to

assess the practical consequences of the litigation, and may consider any significant legal effect on the applicant's interest.

It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest. Yet, *this factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant stare decisis effect on their claims*, or if the applicants' rights may be affected by a proposed remedy.

*Id*. at 1122-23 (emphasis added). Appellants argue that if intervention is not allowed and if Liberty Mutual is found to have no duty to defend or indemnify PMP, they will sue Liberty Mutual under the Pennsylvania Insurance Insolvency Act, 40 P.S. § 117. Appellants surmise that in that suit under the Act, Liberty Mutual will raise, as *stare decisis*, the holding of the district court in the declaratory judgment action that the UEL policies have been exhausted. Therefore, they argue that if they are not permitted to intervene, there is a strong possibility that their claims against Liberty Mutual in a suit under the Act will be impaired or even eliminated through *stare decisis.*

This argument fails to recognize that the "interest element" and the "impairment element" are separate and distinct aspects of our intervention as of right inquiry. *See Kleissler*, 157 F.3d at 969. We examine the impairment element only after the applicant for intervention as of right has shown a protectable legal interest. *Brody*, 957 F.2d at 1122 ("Once an applicant for intervention has established that he or she

possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit."). However, as we explained above, Appellants have not established a sufficient interest to intervene as of right. Therefore, we do not proceed to the impairment inquiry.

### B. Permissive Intervention Under Fed.R.Civ.P. 24(b).

Rule 24 provides in relevant part:

**(b) Permissive intervention.** Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b)(2). The district court did not believe there were common questions of law or fact between Appellants' personal injury actions against PMP and the declaratory judgment action between Liberty Mutual and PMP. We agree. In fact, the argument to the contrary is so facially dubious that discussion of that position is hardly warranted. Moreover, our review of the denial of a motion for permissive intervention is less stringent than the standard for reviewing a denial of a motion for intervention. *Brody*, 957 F.2d at 1115. "We are more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." *Id.* In fact, one court of appeals has noted that a denial of a motion for permissive intervention "has virtually never been reversed." *Catanzano by Cantanzano v. Wing*, 103 F.3d 223, 234 (2d Cir.

23

1996).[7]

Nevertheless, Appellants claim that their personal injury actions against PMP have a common issue of law and fact with PMP in the declaratory judgment action, i.e., they and PMP "all seek a determination of whether an asbestos claimant in a suit against PMP may recover on that claim, through the Liberty Mutual Policies." Appellants' Br. at 30. We disagree.

As noted above, this argument warrants little discussion or analysis. The declaratory judgment action turns on the interpretation of the contracts of insurance between PMP and Liberty Mutual. It has nothing to do with whether PMP caused asbestos-related bodily injuries to Appellants or anyone else. Similarly, the personal injury suits against PMP have nothing to do with interpreting PMP's insurance policies with Liberty Mutual. Where a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she can not accurately claim that there are common questions of law or fact between the coverage dispute and actions to determine liability for injuries PMP may have caused. *See Pacific Indemnity*, 76 F.R.D. at 660.

## C. Appellants Are Not Indispensable Parties Under State Law or Fed.R.Civ.P. 19.

---

[7] Our citation to this comment does not mean that we vouch for its statistical accuracy. Rather, we have included this quotation from *Wing* in order to emphasize the formidable nature of Appellants' burden under Rule 24(b).

Appellants also claim that the district court did not give sufficient consideration to their contention that state law governs their intervention or that they are entitled to intervene under Fed.R.Civ.P. 19.

## (1). The *Erie* Doctrine and State Law.

In *Vale Chem. Co. v. Hartford Accident and Indemn. Co.*, 516 A.2d 684 (Pa. 1986), the Pennsylvania Supreme Court, interpreting the Pennsylvania Declaratory Judgment Act, 42 P.S. § 7540(a), held that where claims are asserted against an insured, those asserting the claims are indispensable parties in a declaratory judgment action to determine coverage between the insured and the insurer. Because third-party claimants had not been joined as indispensable parties, the Pennsylvania Supreme Court found that the district court lacked subject matter jurisdiction over the declaratory judgment action.

Appellants appear to suggest that *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), required the district court to apply the interpretation of the Pennsylvania Declaratory Judgment Act established in *Vale* in deciding their right to intervene under Rule 24(a). They also claim that under *Erie* and *Vale*, they have a sufficient interest to intervene as a matter of right. Otherwise, they argue, we would create the implausible situation where their interests would be sufficient for them to be considered indispensable parties if Liberty Mutual had instituted a declaratory judgment action in Pennsylvania state court, but that these same interests would not suffice for intervention in a federal court declaratory judgment action. Not surprisingly, they offer no authority for their claim.

25

Under *Erie,* "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Admittedly, "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Id.*

> *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), an early interpretation of *Erie*, propounded an "outcome-determination" test: "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" 326 U.S., at 109. Ordering application of a state statute of limitations to an equity proceeding in federal court, the Court said in *GuarantyTrus*t: "[W]here a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Ibid*.; *see also Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) (when local law that creates the cause of action qualifies it, "federal court must follow suit," for "a different measure of the cause of action in one court than in the other [would transgress] the principle of *Erie* "). A later pathmarking case, qualifying *Guaranty Trust*, explained that the "outcome-determination"

26

test must not be applied mechanically to sweep in all manner of variations; instead, its application must be guided by "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

*Gasperini*, 518 U.S. at 427-28.

Appellants suggest that, under an "outcome determinative" analysis, if *Vale* is not applied,

the present situation is likely to cause both unfair discrimination against in-state insurance companies and to encourage out of state insurance companies to choose federal court. Indeed, if [Appellants] are not permitted to intervene, Liberty Mutual will have been permitted to engage in blatant forum shopping. Specifically, such a decision will allow Liberty Mutual (and other out of state insurance companies) to escape litigation against tort claimants by filing similar declaratory judgment actions in federal court rather than complying with *Vale* requirements in state court. Liberty Mutual will gain an unfair advantage in its ability to elude tort victims' claims – an advantage not available to resident insurance companies who are unable to sue in federal court through diversity jurisdiction. Such a result is obviously inequitable.

27

Appellants' Br. at 37-38.

The argument can best be described as a "stretch." Liberty Mutual is not engaging in forum shopping. It is entitled to seek a federal forum based on our jurisdiction. Moreover, the *Erie* "outcome-determination" test requires that the substantive law that would be applied in state court be applied in a federal court exercising diversity jurisdiction. *Vale* did not announce substantive principles of law for Pennsylvania courts to apply in insurance coverage disputes. Rather, *Vale* addressed procedural and jurisdictional issues. *Vale* stands for the proposition that an injured claimant is an indispensable party in a suit to determine insurance coverage under Pennsylvania's Declaratory Judgment Act. Without the joinder of the indispensable party, the state court lacks subject matter jurisdiction over the declaratory judgment action. However, since *Vale* is a procedural and jurisdictional ruling, *Erie* does not require the district court to apply Pennsylvania law to resolve Appellants' motion to intervene under Fed.R.Civ.P. 24(a).

## (2). Rule 19 and Rule 24.

Rule 19, titled "Joinder of Persons Needed for a Just Adjudication," provides in relevant part:

> **(a). Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the

28

action and is so situated  that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest . . . .

Fed.R.Civ.P. 19(a)(2)(I).    Appellants argue that they are necessary parties under Fed.R.Civ.P. 19(a)(2)(I), and are therefore entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2).   Admittedly, the advisory committee's notes to the 1996 amendments to Rule 24 state that if a person should be joined under Rule 19, he/she   should also be entitled to intervene under Rule 24.  The note explains:

> Intervention of right is here seen to be a kind of counterpoint to Rule 19(a)(2)(I) on joinder of persons needed for a just adjudication: where, upon motion of a party in an action, as absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion.

(citing Louisell & Hazard, *Pleading and Procedure: State and Federal* 749-50 (1962).    There is, however, a difference between Rule 19 and Rule 24.  Although both Rules speak of the applicant's ability to protect an interest, Rule 24 contains an additional element, i.e., the adequacy of representation.  Rule 24(a)(2) provides: "Upon timely application anyone shall be permitted to intervene in an action . . . when . . . the applicant is so situated that the disposition of the action may as a practical

matter impair or impede the applicant's ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*" (Emphasis added). Rule 19 does not invite inquiry into the adequacy of representation. It is therefore illogical to conclude that a party who meets the joinder requirements of Rule 19(a)(2)(I) automatically qualifies to intervene as of right under Rule 24(a)(2). That interpretation would read the "adequacy of representation" requirement out of Rule 24(a)(2) by creating a backdoor into the litigation through the less restrictive inquiry of Rule 19(a)(2)(I).

Furthermore, even assuming *arguendo* that a necessary party under Rule 19(a)(2)(I) can intervene as of right under Rule 24(a)(2), Appellants cannot qualify as necessary parties under Rule 19(a)(2)(I) because their interest does not "relate[] to the subject of the action." "Under Fed.R.Civ.P. 19(a)(2), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action." *Spring-Ford Area School District v. Genesis Ins. Co.*, 158 F.Supp.2d 476, 483 (E.D. Pa. 2001) (citations omitted); *see also Special Jet Services, Inc. v. Federal Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979) ("The 'interest' relating to the subject matter of the action that makes an absent party a party needed for just adjudication must be a legally protected interest, not merely a financial interest or interest of convenience.") (quoting 3A, Moore's Federal Practice ¶ 19.07-1(2). As we explained earlier, Appellants do not have a legally protectable interest in the Liberty Mutual UEL policies.

## IV. CONCLUSION

For all of the above reasons, we will affirm the district court.