In re **STONE & WEBSTER, INCORPORATED, et al., Debtors.**

**Consolidated SWINC Estate, and SWE & C Liquidating Trust, Plaintiffs,**

v.

**ACE USA, Inc., and Century Indemnity Company, Defendants.**

**Bankruptcy No. 00–2142(PJW). Adversary No. 07–50390(PJW).**

United States Bankruptcy Court, D. Delaware.

Jan. 14, 2008.

Marc S. Casarino, White and Williams LLP, Wilmington, DE, Thomas Going, Joseph Gibbons, John J. Lawson, Craig H. O'Neill, White and Williams LLP, Philadelphia, PA, Attorneys for Defendants Century Indemnity Company and ACE USA, Inc.

Neil B. Glassman, Mary E. Augustine, The Bayard Firm, Wilmington, DE, Local Counsel for Narragansett Electric Company and Southern Union Company.

John Voorhees, Robert W. Jones, J. Nathan Galbreath, Patton Boggs LLP, Dallas, TX, Attorneys for Narragansett Electric Company.

John C. Canoni, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, Attorneys for Southern Union Company.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the joint motion (Doc. # 57) of Narragansett Electric Company ("NEC") and Southern Union Company ("SU") (collectively "Interveners") to intervene in this adversary proceeding between Consolidated SWINC Estate and SWE & C Liquidation Trust (collectively "Plaintiffs") and ACE USA, Inc., and Century Indemnity Company (collectively "Defendants"). For the reasons discussed below the Court will grant the motion to intervene.

### Background

The proceeding originated from the bankruptcy case of Stone & Webster, Inc. and certain of its subsidiaries (collectively "Debtors"). (Doc. # 61, p. 4). Plaintiffs are successors-in-interest to the Debtors. (Doc. # 61, p. 4). Defendants are allegedly successors-in-interest to companies that purportedly issued comprehensive general liability insurance contracts to the Debtors between 1932 and 1961.[1] (Doc. # 61, p. 4).

Interveners are two companies that filed environmental tort claims against the Debtors prior to the bankruptcy petition. NEC is a Rhode Island corporation that provides electricity to customers in Rhode Island. (Doc. # 57, p. 2). SU is a Delaware corporation that, among other things, provides natural gas to customers in Massachusetts. (Doc. # 57, p. 2). The Interveners brought suits against the Debtors for costs allegedly incurred in the clean up of manufactured gas plants ("MPG") and manufactured gas waste disposal sites that the Debtors allegedly owned or operated. (Doc. # 61, p. 4). Defendants' predecessor-in-interest was supposedly under a duty to defend the Debtors against Interveners' suits, and indemnify the Debtors under the disputed insurance contracts. (Doc. # 61, p. 4). But it allegedly failed to carry out its duty and left the dispute unsettled when the Debtors filed for chapter 11 bankruptcy. (Doc. # 61, p. 4). Interveners filed proofs of claims totaling over $20 million for costs incurred and undetermined future amounts related to the cleanup. (Doc. # 61, p. 4).

In 2003, the Debtors entered into a settlement agreement ("Settlement") with the Interveners to resolve the cleanup cost claims. (Doc. # 57, p. 2). The pertinent

---

1. Century Indemnity Company admits that it is the successor to the companies which purportedly issued the alleged insurance contracts at issue. ACE USA, Inc., does not make such admission. (Doc. # 61, p. 4 n. 3). For the purpose of this motion, the Court will consider ACE USA, Inc. to be successor-in-interest as well.

sections of the Settlement provides: (1) Debtors will immediately distribute $5 million to the Interveners from its bankruptcy assets. (2) Debtors must thereafter use reasonable efforts to collect proceeds from its insurance carriers and must share those proceeds with the Interveners. Specifically, they will share the proceeds on a 50–50 basis until the Interveners are paid an additional $5 million in the aggregate.

As of the date of this motion, Debtors have paid to the Interveners $7,875,000 in the aggregate: (a) $5 million from the bankruptcy estate; (b) $2.35 million from the Royal Insurance Company payment; (c) $525,000 from the Kemper Insurance Company payment. (Doc. # 57, p. 2). Thus, Debtors must still pay to the Interveners $2,125,000 from any future insurance proceeds.

In this proceeding Plaintiffs are seeking (a) a declaration that Defendants' insurance contracts cover alleged environmental liabilities of the Debtors, and (b) to recover insurance proceeds from Defendants for defense costs relating to all environmental MGP claims against Debtors and indemnity of Debtors for its current and future liability for MGP claims. (*See* Doc. # 57, pp. 1–2; Doc. # 61, p. 4). Thus, portions of any payout from this proceeding will be distributed to the Interveners in satisfaction of the Debtor's Settlement obligation.

## Discussion

Interveners seek to intervene in this proceeding either as a matter of right or by permission of this Court. For intervention as a matter of right the Interveners rely on Federal Rules of Civil Procedure 24(a)(1) and 11 U.S.C. § 1109(b) of the Bankruptcy Code, or in the alternative, Rule 24(a)(2). (Doc. # 57, pp. 3–4). For permissive intervention the Interveners cites to Rule 24(b)(2). (Doc. # 57, p. 6).

(a) *Intervention As a Matter of Right*

█ Federal Rules of Civil Procedure Rule 24(a)(2) states:

Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Third Circuit Court of Appeals has deciphered from it four factors that an applicant for intervention must prove: "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervener's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir.2005)(citing *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)).

(i) *First Factor*

█ The first factor is met by the Interveners. The critical inquiry is, "what proceeding of substance on the merits has occurred?" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir.1995). Here, the Interveners filed the motion to intervene shortly after Defendants filed their answer and affirmative defenses, and no substantive proceedings have occurred. Also, Defendants do not challenge this factor.

(ii) *Second Factor*

█ The second factor requires the Interveners to show that they have "suffi-

cient interest" in this adversary proceeding. Interveners assert that they have "a direct interest" in the proceeds because they are entitled to fifty percent of any insurance proceeds that Plaintiffs recover from Defendants. (Doc. # 57, p. 5). They cite *Mountain Top* for support. Defendants distinguish the *Mountain Top* decision that the Interveners rely on, and contend that according to *Treesdale,* mere economic interest in the outcome of the litigation is not sufficient interest. (Doc. # 61, pp. 8–9).

The standard for determining "sufficient interest" was stated by the Third Circuit in *Mountain Top.* The applicant must have a "significantly protectable" legal interest at stake. *Mountain Top,* 72 F.3d at 366 (quoting *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971)). Which means that "the interest must be a legal interest ... [and][t]he applicant must demonstrate that there is a tangible threat to [the] legally cognizable interest to have the right to intervene. This interest is recognized as one belonging to or one being owned by the proposed interveners." *Mountain Top,* 72 F.3d at 366. As Defendants point out, " 'a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene.' " *Treesdale,* 419 F.3d at 221 (quoting *Mountain Top,* 72 F.3d at 366). But, " 'an intervener's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund.' " *Id.* (quoting *Mountain Top,* 72 F.3d at 366).

In *Mountain Top,* the board of the condominium association ("Board") was in charge of the repair and restoration of the condominium. 72 F.3d at 363. The Board received insurance payout from the condominium's insurance carrier and placed it in a trust designated for hurricane reconstruction. *See id.* at 364. It disbursed part of the payout to condominium owners and hired a builder to do some repair work on the condominium. *Id.* Dispute arose, however, between the Board and the builder, and the Board brought suit in the district court. *Id.* As a result, the Board had to put the remaining balance of the insurance payout in an escrow account pending the result of the court-ordered mediation. *Id.* The party seeking to intervene in the mediation was a condominium owner. He filed a civil action alleging that the Board did not disburse the insurance proceed in good faith. *See id.* at 364–65. The Third Circuit weighed the four factor for Rule 24(a)(2) and granted the motion to intervene, reversing the district court. *Id.* at 370.

The facts in *Treesdale* is very much different. Pittsburgh Metals Purifying Company ("PMP") was facing many personal injury law suits resulting from customers using their products containing asbestos. *See Treesdale,* 419 F.3d at 218–19. Several thousands persons wanted to intervene in a declaratory judgment action between PMP and its insurance carrier. *Id.* The issue in the declaratory judgement was whether the insurance carrier was obligated to pay any additional amount to defend or settle PMP's asbestos liabilities. *See id.* at 219–20. The interveners argued that they have a sufficient interest in the declaratory judgement because their right to recover from the insurance carrier's asbestos-related payout could be affected by the judgment. *See id.* at 219. The interveners also relied on *Mountain Top* for support. After distinguishing the case from *Mountain Top* the Third Circuit denied the motion to intervene for lack of sufficient interest. *Id.* at 227.

In finding that the interveners in *Treesdale* did not have sufficient interest, the Third Circuit differentiated the interveners interests in *Mountain Top* from those

in *Treesdale*. It noted that in *Mountain Top* the condominium by-laws and local statute designated the insurance proceeds to be held in trust for the benefit of all condominium owners. *Id.* at 222. Thus, the condominium owner who sought to intervene was an intended beneficiary of the express trust, and had a legally or equitably enforceable interest in the trust res. *See id.* The interveners in *Treesdale,* however, "ha[d] no property interest in the [insurance] policies nor d[id] they have any other legally protectable interest in the policies." *Id.* They only had economic interests in the insurance proceeds and that was not enough interest to support intervention as a matter of right. *See id.*

Defendants' claim that the Interveners' interest is dissimilar to *Mountain Top* because in present case no fund is held specifically for the benefit of the Interveners. (Doc. # 61, p. 8). Rather, the Interveners only have an economic interest in the general recovery of insurance proceeds, which is akin to *Treesdale*. (Doc. # 61, p. 8). This Court disagrees.

■ I find that the Interveners have a "significantly protectable" legal interest because they have both an economic interest and a contractual interest in this adversary proceeding. The contractual interest arises from the Settlement that the Interveners executed with Plaintiffs. A settlement, when made knowingly and voluntarily, amounts to a binding and enforceable contract, which is a legal interest. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Hayes v. Nat'l Serv. Indus.,* 196 F.3d 1252, 1254 (11th Cir.1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements.") This distinguishes the present case from *Treesdale*.

Interveners' contractual interest is also under "tangible threat." As a result of the Settlement, the Interveners are entitled to half of any MGP related liability insurance proceeds Plaintiffs recover, up to $2,125,000. The issue in this adversary proceeding is whether Defendants are liable to Plaintiffs for additional MGP related litigation and settlement cost. Thus, the outcome could adversely affect the Interveners' recovery pursuant to the Settlement. Consequently, the Settlement gives the Interveners a protectable legally interest in this proceeding, more than a mere economic interest, which is a sufficient interest.

### (iii) *Third Factor*

■ The third factor looks to whether there is any threat that the Interveners' interest would be affected by the adversary proceeding. As discussed above, this proceeding deals specifically with Plaintiffs' insurance coverage for their MGP liability, thus it directly affects the amount of money the Interveners will receive under the Settlement. Hence, if Plaintiffs loose this litigation, the Interveners' interest will be impaired.

Defendants contend that the Interveners cannot intervene in this case because they had negotiated away their right to participate when they entered the Settlement. (Doc. # 61, p. 10). They reason that the Interveners had agreed to allow Plaintiffs to pursue insurance proceeds, and implicitly the Interveners had assumed the risk that Plaintiffs will not be successful, and therefore, the Interveners cannot raise a claim of impairment. (Doc. # 61, p. 10). The Court is somewhat puzzled as to how Defendants could make this argument.

There are two relevant provisions in the Settlement:

6. The [Plaintiffs] shall use reasonable efforts to obtain recovery from their primary insurers. To the extent

the [Plaintiffs], through settlement or otherwise, recover any payments from their primary insurers with regard to the Allowed Remediation Claim, the insurance proceeds will be divided and disbursed 50% to the [Plaintiffs] and 50% to the [Interveners] until such time as the [Interveners] are paid an additional $5,000,000 (the "Additional Cash Payment"). Until the Additional Cash Payment is received by the [Interveners], any settlement between the [Plaintiffs] and their primary insurers with regard to the Allowed Remediation Claim will be subject to approval by the [Interveners], whose approval will not be unreasonably withheld. The Bankruptcy Court will retain jurisdiction to determine the reasonableness of any proposed settlement between the Debtors and their primary insurers with regard to the Allowed Remediation Claim to the extent that the [Interveners] disapprove of any such proposed settlement.

\* \* \*

8. On the Effective Date of the Joint Plan, the [Plaintiffs] will assign jointly to the [Interveners] the right to control assertion and settlement of claims and the right to receive any proceeds from any of the [Plaintiffs] insurance policies (other than the [Plaintiffs'] primary insurance policies) with respect to losses, liabilities and expenses relating to the remediation of the BVG & E Sites and the Fall River Sites, and the [Plaintiffs] will cooperate in good faith with the [Interveners] in providing copies of the applicable policies, and secondary evidence of the existence and terms of such polices.

(Doc. # 57, ex. 1). Even though the initial burden has been placed on Plaintiffs to use reasonable effort to recover coverage from their primary insurers, there is nothing in the Settlement that precludes the Interveners from participating in this action. To the contrary, the Interveners rights as against the Defendants is reflected in the Settlement provision giving the Interveners a reasonable veto over any settlement between the Plaintiffs and the Defendants. By being a party to this proceeding the Interveners will be in a better position to protect their veto right.

(iv) *Factor Four*

■ The last factor is whether the Interveners' interest is adequately represented by another party. The burden of proof for this factor is minimal, "[t]he requirement ... is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Mountain Top*, 72 F.3d at 368.

Defendants raise two arguments. First, the Interveners and Plaintiffs have "clearly aligned" interest because they are sharing the recovery equally. (Doc. # 61, p. 11). Second, the Interveners cannot claim that Plaintiffs are inadequate to pursue this claim because they entered into the Settlement. (Doc. # 61, p. 12). As discussed above, the Court has already rejected the second argument, and as for the first argument, this Court also disagrees with Defendants.

On an important issue the Interveners and Plaintiffs' interests are in conflict. One of the main issues in this adversary proceeding is whether Plaintiffs have any MGP liability to the Interveners. The Interveners want to prove Plaintiffs were liable for MGP environmental damages, thus triggering the coverage obligation. But when Plaintiffs entered into the Settlement they did so without admitting fault or liability for the MGP claims at issue here. The parties avoided litigation over

that issue by entering into the Settlement. However, despite the Settlement, the Defendants now are forcing a consideration of Plaintiffs' MGP liability and the damages suffered by the Interveners. The Interveners presumably have significant knowledge and evidence regarding the MGP liability at issue here. It seems clear that the Interveners are in a better position than the Plaintiffs to establish facts showing MGP environmental damages. Because the Interveners' interest is not completely aligned with Plaintiffs and they likely have additional pertinent evidence, the Interveners' interest are not adequately represented in this case.

After applying the four factor analysis this Court is convinced that the Interveners have met each factor and are therefore entitled to intervention as a matter of right pursuant to Rule 24(a)(2).

### (b) *Permissive Intervention*

■ Alternatively, the Interveners plead that they should be granted permissive intervention pursuant to Fed.R.Civ.P. 24(b). Rule 24(b) states:

Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim ... and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Brody v. Spang,* 957 F.2d 1108, 1116 (3d Cir.1992).

Defendants contend that the Interveners' tort claims against Plaintiffs are not similar enough to the insurance contract claims asserted by Plaintiffs against Defendants. Defendants again rely on *Treesdale* for their argument. In its analysis the *Treesdale* court noted that "[t]he declaratory judgement action turns on the interpretation of the contracts of insurance between PMP and [insurance carrier]. It has nothing to do with whether PMP caused asbestos-related bodily injuries to the [plaintiffs]...." *Treesdale,* 419 F.3d at 227–28. Therefore, the court concluded, "[w]here a proposed intervener has only a contingent financial interest in a declaratory judgement action to establish insurance coverage, he/she cannot accurately claim that there are common questions of law or fact between the coverage dispute and actions to determine liability for injuries PMP may have caused." *Id.* at 228.

This Court does not agree that *Treesdale* is comparable to this case. The key distinction is the status of the tort claim. The interveners in *Treesdale* had on going litigations against PMP for asbestos-related injuries, thus their recovery in the trial between PMP and its insurance carrier was contingent on them wining or settling their tort claims. Hence, they only had a "contingent financial interest." Here, the Interveners' tort claim against Plaintiffs have already been settled, and they are contractually entitled to portion of Plaintiffs' recovery. Therefore, the Interveners' interest is not contingent.

■ The key issues in this adversary proceeding are whether Plaintiffs are liable for MPG damages to the Interveners and if Defendants' policies cover such liability. Interveners' position is that Plaintiffs are liable to them for MPG damages, and such damage is under Defendants' coverage. Therefore, the Interveners do "have a question or fact in common" with Plaintiffs. As for any possible unduly delay or prejudice that might result from the intervention, I do not believe there will be any. As noted above, no substantive procedures have occurred in this adversary proceeding. In fact, because the Interveners may have substantial evidence bearing

on Plaintiffs tort liability, their participation might expedite the adversary proceeding.

### Conclusion

For the reasons stated above, the Interveners' motion to intervene is granted.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the joint motion (Doc. # 57) of Narragansett Electric Company and Southern Union Company to intervene in this adversary proceeding is GRANTED.